**William C. FEINSTEIN, et al.,
Plaintiffs, Appellants,**

**v.**

**RESOLUTION TRUST CORPORATION,
etc., et al., Defendants, Appellees.**

Nos. 91–1030, 91–1181.

United States Court of Appeals,
First Circuit.

Heard June 5, 1991.

Decided Aug. 13, 1991.

Richard M. Howland with whom Leslie A. McLellan and Richard M. Howland, P.C., were on brief, Amherst, Mass., for plaintiffs, appellants.

Paul R. Devin with whom Deborah S. Griffin, Lon A. Berk and Peabody & Arnold, were on brief, Boston, Mass., for defendant, appellee Resolution Trust Corp.

Thomas M. Elcock with whom Jean M. Kelley, Cheryl A. Enright and Morrison, Mahoney & Miller, were on brief, Boston, Mass., for defendants, appellees Patrick Evans and Swartz, Evans, Dickinson, Parmeter, Tinker & Timmerman, P.C.

Stephen W. Gebo with whom Conboy, McKay, Bachman & Kendall, Watertown, N.Y., and Barnes & Etheredge, Northampton, Mass., were on brief, for defendants, appellees Carthage Federal Sav. and Loan Ass. and Edwin W. Sweet.

Before SELYA and CYR, Circuit Judges, and KEETON,[*] District Judge.

SELYA, Circuit Judge.

These appeals test the pleading threshold for civil actions brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. After studying the threshold's architecture, we affirm the district court's dismissal of the plaintiffs' complaint for failure to state an actionable claim.

## I. BACKGROUND

We summarize the facts consistent with our obligation under the jurisprudence of Fed.R.Civ.P. 12(b)(6) to give the complaint a highly deferential reading, accepting the well-pleaded facts therein as true and drawing all reasonable inferences in the plaintiffs' favor. *See Conley v. Gibson*, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). "We exempt, of course, those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise, and likewise eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).

William Feinstein, Bennett Gaev, John Herbert, Richard Krasnor, Jan Krasnor, Henry Casten and Nancy Casten (collectively, "plaintiffs" or "appellants") entered into four separate joint venture agreements with Patrick Gleason. The purpose of each joint venture was "to hold, manage, buy, sell, mortgage, hypothicate [sic], exchange [and] pledge" certain real estate located in Watertown, New York.[1] Gleason, a Massachusetts attorney, was to give legal advice to the plaintiffs, choose the properties, manage the joint ventures' affairs, and keep the necessary records. The

---

[*] Of the District of Massachusetts, sitting by designation.

1. Herbert signed a joint venture agreement with Gleason on March 17, 1986; Feinstein and Gaev entered into separate joint venture agreements with Gleason on the following day; the Kras-nors and the Castens formed a partnership, Krasten Associates, that entered into a joint venture agreement with Gleason on June 30, 1986. All the plaintiffs were and are citizens of Massachusetts.

plaintiffs were to provide the wherewithal for purchasing the properties, through bank financing if desirable. William Foster, a Massachusetts real estate broker, acted as a scout, finding suitable parcels for acquisition. In the harsh light of retrospect, the plaintiffs now allege that Gleason, Foster, and a host of other defendants practiced a scheme to defraud.

As set forth in the complaint, the scheme gained headway with the joint venturers' purchase of the Watertown properties. In the course of these acquisitions, Gleason and Foster dealt with Patrick Evans (a New York lawyer) and his law firm, Swartz, Evans, Dickinson, Parmeter, Tinker & Timmerman, P.C. (the "Swartz Firm"); Carthage Federal Savings and Loan Association (an institutional lender); and Edwin Sweet (who was both an appraiser and a director of Carthage Federal). The plaintiffs allege that Evans and the Swartz Firm, while representing the plaintiffs, prepared dual closing statements for these sales: one set for the sellers' use, reflecting the actual selling prices; the other set for the plaintiffs' consumption, reflecting inflated prices. The plaintiffs were not informed of the true costs of acquiring the real estate. Moreover, Evans supposedly doubled his legal fees in connection with the acquisitions by the Gaev and Feinstein joint ventures; Gleason and Foster allegedly induced Sweet to inflate his appraisals to square with the fictitious prices; and Carthage Federal is said to have accepted Sweet's rigged appraisals as a basis for granting purchase money mortgages on the properties. The Swartz Firm, Evans, Sweet, and Carthage Federal are all appellees.

A second group of appellees entered the picture in or after June 1988, when, at a series of meetings with the various plaintiffs, Gleason and Foster proposed trading the Watertown properties for properties in Houston, Texas. Commonwealth Federal Savings and Loan Association, represented here by its conservator, Resolution Trust Corporation ("RTC"), allegedly offered to exchange foreclosed Houston real estate for the Watertown properties. In order to do the deal, Gleason is said to have induced the plaintiffs to execute limited powers of attorney. He then altered these documents to expand his apparent authority, enlisting Carol Majkowski to execute false notarial affidavits in connection with the forged powers of attorney. The plaintiffs claim that Gleason and Foster hired Thomas Humes, a New York real estate broker, to provide overgenerous appraisals of the Watertown properties; and that these fraudulent appraisals, along with assignments executed by virtue of the bogus powers of attorney, were embraced by Commonwealth Federal when, in August 1988, it loaned Gleason and Foster funds secured by second mortgages on plaintiffs' Watertown assets, enabling Gleason and Foster to purchase the Houston properties in their own names using the plaintiffs' equity as collateral.

The plaintiffs also charged that, as part of the overall scheme, Gleason continually exceeded his authority to draw on the funds of the joint ventures; refused to provide an accounting of his actions as required in the joint venture agreements; commingled the assets of the four joint ventures; and wrongfully transferred funds to other accounts. None of the appellees is alleged to have been involved in, or to have benefitted from, these flagitious activities.

Eventually, the bubble burst. On June 5, 1990, the plaintiffs, invoking federal question jurisdiction, 28 U.S.C. § 1331, brought suit in the United States District Court for the District of Massachusetts against Gleason, Foster, Evans, the Swartz Firm, Carthage Federal, Sweet, Commonwealth Federal, Majkowski, Humes, and two others (Regina Gleason and Daniel Gleason).[2] Count 1 of the complaint alleged that the eleven defendants, "[t]hrough their scheme to defraud Plaintiffs ..., have conspired to and have engaged in a pattern of racketeering activity in violation of 18 U.S.C. [§] 1962(c) and

---

**2.** Venue was premised on 18 U.S.C. § 1965(a), plaintiffs alleging that each defendant "is found and/or has transacted business" within the district.

(d)." The remaining counts asserted claims under state law for alleged breach of fiduciary duty, common law fraud, breach of contract, and legal malpractice.

The several defendants filed no fewer than four separate motions to dismiss. It would serve no useful purpose to describe the motions individually. Collectively, the motions contended that the complaint was open to dismissal for (a) failure to state claims upon which relief could be granted, (b) lack of subject matter and/or personal jurisdiction, and (c) improper venue. Following plethoric briefing and oral argument, the district court ruled *ore tenus* that, as to the six appellees, the RICO count fell short of articulating an actionable claim.[3] In the court's view, the complaint failed sufficiently to allege either "a pattern of racketeering activity" or that defendants "comprised an association which functioned as a criminal enterprise." Finding no other basis for the assertion of federal jurisdiction over the appellees, the court dismissed the state-law counts, without prejudice, for lack of subject matter jurisdiction. These appeals ensued.

## II. THRESHOLD MATTERS

We turn first to certain preliminary matters which, conceivably, might pretermit our consideration of the merits of these appeals.

### A. *Appellate Jurisdiction.*

■ Fed.R.Civ.P. 54(b) permits the entry of one or more final judgments as to fewer than all the parties in a multi-party action, and thus an appeal, "upon an express determination that there is no just reason" to delay the entry of judgment. The district court allowed the appellees' motions for

entry of final judgments in this case,[4] notwithstanding that the suit was to proceed as against certain other defendants. In so doing, however, the district court neglected to make specific findings or otherwise to state its reasons for allowing earlier-than-usual appeals to be taken.

We painstakingly portrayed the preferred practice under Rule 54(b) in *Spiegel v. Trustees of Tufts College*, 843 F.2d 38 (1st Cir.1988). We stressed that, in most cases, a statement of reasons would likely be necessary to justify resort to Rule 54(b). *Id.* at 43 & n. 4. We warned that "[a] party who seeks the special dispensation that Rule 54(b) envisions has an obligation, at the very least, to point out the requirement and to ask that the court ... make a brief but particularized statement of its reasons [for acting]," in order to demonstrate that the rule was being properly invoked. *Id.* at 44 n. 5. That warning went unheeded in this case.

While we could, of course, refuse to accept jurisdiction under the circumstances, we have concluded that this is the rare case where the absence of Rule 54(b) findings can be overlooked. Without lengthy enumeration, it suffices to say that, here, the district court, faced with motions asking that it "enter a separate and final judgment in [the movants'] favor ... making an express determination that there is no just reason for delay of the entry of this judgment," granted them. Each motion was accompanied by a memorandum explaining why the request conformed to the imperatives of Rule 54(b). Under these circumstances, and with due respect to our dissenting brother, we would be sacrificing substance on the altar of form were we to interpret the judge's allowance of the mo-

---

**3.** The district court dismissed as to Evans, the Swartz Firm, Carthage Federal, Sweet, Commonwealth Federal (RTC), and Humes (appellees before us). The three Gleasons, Foster, and Majkowski did not join in the motions to dismiss. They were, therefore, not directly affected when the motions were granted and are not protagonists in these appeals. As to them, the suit remains pending in the district court.

**4.** Initially, Evans and the Swartz Firm moved for the entry of a separate and final judgment as

to the claims against them. The district court obliged, entereing final judgment as to those defendants on December 28, 1990. Shortly thereafter, Humes, Carthage Federal, Sweet, and RTC filed Rule 54(b) motions for the entry of judgment. The lower court again obliged, entering a second judgment on January 29, 1991. The plaintiffs filed a timely notice of appeal after the entry of each judgment. The two appeals have been consolidated.

tions as anything less than an "express determination" that Rule 54(b)'s requirements were met. Nor can we interpret his ruling, especially in view of the clerk's affirmative response, as less than an "express direction."

To be sure, as Judge Cyr points out, the lack of specific findings is troubling—but in these circumstances, not fatal. A weighing of the factors relevant to the use of Rule 54(b), *see Spiegel*, 843 F.2d at 43–44, tilts sharply in favor of allowing the appeals to go forward. All of the parties have urged us to follow that course. The challenged ruling, which disposed of all claims against all six appellees, possessed the necessary finality. *See id.* at 42–43. This, then, is a case where, although more careful attention to detail would have been desirable, "compelling considerations [favoring the entry of an earlier-than-usual judgment] are self-evident on the face of the record." *Id.* at 43 n. 4. Because we deem the lower court's justification for resort to Rule 54(b) to be both apparent and sufficient, appellate jurisdiction attaches notwithstanding the court's failure to state its reasons. , *See, e.g., St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 693–94 (2d Cir.1989); *Knight v. Mills*, 836 F.2d 659, 661 n. 2 (1st Cir.1987).

### B. *Personal Jurisdiction; Venue.*

■ The plaintiffs claim that the district court was wrong to consider the motions to dismiss on substantive grounds without first addressing the issues of personal jurisdiction and venue. Their contention is unavailing. Having willingly chosen the forum, and not having asked the court below to pass first on the issues of jurisdiction and venue, the plaintiffs cannot now be allowed to escape an adverse judgment by asserting rights belonging not to them but to their litigation adversaries.

■ To be sure, judgments of courts lacking *in personam* jurisdiction are judgments *coram non judice*. *See Burnham v. Superior Court*, —— U.S. ——, 110 S.Ct. 2105, 2109, 109 L.Ed.2d 631 (1990); *Stoll v. Gottlieb*, 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); *see also General Contracting & Trading Co. v. Interpole, Inc.*, 899 F.2d 109, 114 (1st Cir.1990) (a judgment "entered by a court which lacks personal jurisdiction over the defendant ... is a nullity"). Thus, courts should ordinarily satisfy jurisdictional concerns before addressing the merits of a civil action.

■ Nevertheless, the rule is not mechanically to be applied. In this case, the district court's subject matter jurisdiction was plain, *see* 28 U.S.C. § 1331 (conferring "federal question" jurisdiction on the district courts), and those defendants who raised both jurisdictional and substantive defenses to the suit lodged no complaint about the court's determination as to how it might most expeditiously dispose of the pending motions. The requirement that a court possess *in personam* jurisdiction is a shield to protect the interests of an affected defendant—and, like most shields, can be discarded by the bearer. A defendant over whom a court lacks *in personam* jurisdiction may, for example, waive the defense. *See, e.g., Jardines Bacata, Ltd. v. Diaz–Marquez*, 878 F.2d 1555, 1559 (1st Cir.1989). Where, as here, the affected defendant does not insist that the jurisdictional issue be determined first, and no special circumstances exist,[5] we cannot fault the district court for eschewing difficult jurisdictional and venue-related issues in favor of ordering dismissal on the mer-

---

**5.** The lone authority cited by the appellants in support of their position is *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir.1963), a 2–to–1 decision of a panel of the Second Circuit. We believe that *Arrowsmith* must be limited to its highly idiosyncratic facts. In any event, *Arrowsmith* was a case premised on diversity jurisdiction, *see id.* at 222, where state law, not federal law, supplied the rule of decision. *Id.* at 221 n. 3. Thus, there was a practical reason to determine, first, whether the district court could

exercise *in personam* jurisdiction, for without that determination, the proper choice of law could not reliably be made and the merits intelligently addressed. The instant case—where the district court's jurisdiction was premised on the existence of a federal question and where federal law indisputably controlled as to the adequacy of the RICO claim—is at so great a remove that we can derive no precedential guidance from *Arrowsmith*.

its. *Cf., e.g., Kotler v. American Tobacco Co.,* 926 F.2d 1217, 1221 (1st Cir.1990) ("where an appeal presents a difficult jurisdictional issue, yet the substantive merits underlying the issue are facilely resolved in favor of the party challenging jurisdiction, the jurisdictional inquiry may be avoided"); *see also Norton v. Mathews,* 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976); *Secretary of the Navy v. Avrech,* 418 U.S. 676, 677–78, 94 S.Ct. 3039, 3039–40, 41 L.Ed.2d 1033 (1974).[6]

The path having been cleared, we proceed now to the merits of the appeals.

## III. ANALYSIS

■ In this case, the plaintiffs sued under 18 U.S.C. § 1962(c) and (d). The operative statute is the former, which provides in pertinent part:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise affairs through a pattern of racketeering activity....

18 U.S.C. § 1962(c). To state a claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Section 1962(d) serves to make unlawful conspiracies to violate section 1962(c). In that regard, each defendant in a RICO conspiracy case must have joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses. *See United States v. Angiulo,* 847 F.2d 956, 964 (1st Cir.) (necessary elements of RICO conspiracy charge are (1) the existence of an enterprise, (2) that each defendant knowingly joined the enterprise, and (3) that each defendant agreed to commit, or in fact committed, two or more specified predicate crimes as part of his participation in the enterprise), *cert. denied,* 488 U.S. 852, 109 S.Ct. 138, 102 L.Ed.2d 110, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988); *United States v. Winter,* 663 F.2d 1120, 1136 (1st Cir.1981) (same), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983); *see also Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir. 1990) ("no defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern").

■ Our principal task here is to decide whether the district court erred when it ruled that plaintiffs' complaint failed to demonstrate a pattern of racketeering activity on the appellees' part.[7] We afford

---

**6.** We see no conceivable unfairness here. The appellants could have dismissed the suit against the appellees without prejudice when the jurisdictional issue first surfaced, *see* Fed.R.Civ.P. 41(a)(1)(i) (a plaintiff may dismiss his case unilaterally, without leave of court and without prejudice, "at any time before service by the adverse party of an answer or of a motion for summary judgment"), thus avoiding what they now perceive to be some ill-defined dilemma. They chose not to do so.

**7.** The district court also held that the complaint failed to show the existence of the statutorily required enterprise. Because we find that the court's primary rationale supports the order of dismissal, we need not explore this alternate ground in any detail. Our quest for brevity should not, however, be equated with any lack of confidence in the perspicacity of the district court's views. Although the complaint made a ritualistic averment, in wholly conclusory terms, that the defendants, including the appellees, "constitute[d] an enterprise ostensibly en-

gaging in the business of buying, selling, mortgaging, hypothecating, exchanging and pledging certain properties ... located in various states," it contained no allegations articulating how any of the appellees may have comprised part of an "ongoing organization" or "function[ed] as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Likewise, apart from the cited involvement of Gleason and Foster, there were no fact-specific allegations tying together the New York and Texas transactions, ergo, no foundation for associating the conduct of Evans, the Swartz Firm, Sweet, and Carthage Federal in 1986 with that of Humes and Commonwealth Federal in 1988. Under the circumstances, the district judge's assessment that the complaint did not plead an association in fact adequate to satisfy RICO's enterprise requirement seems unassailable. *See id.; see also Foval v. First National Bank of Commerce,* 841 F.2d 126, 129–30 (5th Cir.1988) (existence of commercial loan transaction held insufficient to establish enter-

plenary review, cognizant that "we may affirm a dismissal for failure to state a claim only if it appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990).

## A. *Were Predicate Acts Properly Pleaded?*

As the Court has recently stated, the definitional section of the RICO statute, 18 U.S.C. § 1961, "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989). In Congress' view, such a pattern "requires at least two acts of racketeering activity, one of which occurred after [October 15, 1979] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); *see also H.J.,* 492 U.S. at 237, 109 S.Ct. at 2899; *Fleet Credit Corp. v. Sion,* 893 F.2d 441, 444 (1st Cir.1990). The predicate acts of which the RICO statute speaks are, basically, acts indictable under any one or more of certain specified criminal laws. *See* 18 U.S.C. § 1961(1)(B). This compendium includes the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, and the Travel Act, 18 U.S.C. § 1952.

▮ Whether or not the appellants succeeded in setting out the appellees' involvement in the racketeering acts essential to the RICO claim depends, in the last analysis, on the appellants' allegations of mail and wire fraud.[8] It is settled law in this

circuit that Fed.R.Civ.P. 9(b), which requires a party to plead fraud with particularity, extends to pleading predicate acts of mail and wire fraud under RICO. *See New England Data Services, Inc. v. Becher,* 829 F.2d 286, 290 (1st Cir.1987). As in any other fraud case, the pleader is required "to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." *Id.* at 291. The appellants have not carried that burden.

▮ In the section of their complaint entitled "fraudulent activities," the plaintiffs averred:

Beginning in late 1985 and continuing thereafter to the present, the Defendants herein together or with other persons known and unknown, devised a scheme to defraud Plaintiffs and conducted their affairs through a pattern of racketeering activity in violation of 18 U.S.C., Section 1962(c) and (d). This pattern of racketeering activity consisted of various acts in violation of 18 U.S.C., Section 1341 relating to mail fraud, [and] 18 U.S.C. [§] 1343 relating to wire fraud....

Neither in this part of the complaint nor in count 1 proper did the plaintiffs supply any additional detail as to when the communications occurred, where they took place, or what they contained.[9] Absent this rudimentary information, the complaint fell measurably short of meeting Rule 9(b)'s specificity requirement. It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial. *See Becher,* 829 F.2d at 292 ("merely stat[ing] conclusory allegations of mail and wire fraud ... with no description of any

---

prise between bank and borrower); 18 U.S.C. § 1961(4) (defining "enterprise").

**8.** Although the appellants also alleged that the Travel Act was infracted, their vague allusions to that statute were so entropic as to add little, if anything, to the Rule 12(b)(6) calculus. At any rate, they have not argued on appeal that Travel Act violations were pleaded in a manner sufficient to meet RICO's racketeering activity requirement. Hence, we need not consider the matter further. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.) (issues not briefed

or argued are waived), *cert. denied,* — U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

**9.** By the same token, the complaint did not allege, in words or substance, that "the specific information as to use [of mail or telecommunication facilities] is likely in the exclusive control of the defendant[s]." *Becher,* 829 F.2d at 290. Given the plaintiffs' stated knowledge of various documents and transactions, as well as their status as joint venturers, the district court could not legitimately be expected to infer such exclusive control *sua sponte.*

time, place or content of the communication" does not satisfy the pleader's burden).

In a garden-variety fraud case, this deficit would eliminate the need for further inquiry. *See, e.g., Powers v. Boston Cooper Corp.,* 926 F.2d 109, 111 (1st Cir.1991) (Rule 9(b) "entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations"); *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir. 1980) (similar). But, we have placed a special gloss on Rule 9(b) in the RICO context. In *Becher,* after concluding that the plaintiff's complaint was insufficient to pass Rule 9(b) muster, we determined that the district court, regardless, abused its discretion in dismissing the action without allowing a brief period for further discovery to aid the plaintiff's ongoing effort to achieve compliance with the rule. 829 F.2d at 292. We held, in essence, that there are certain circumstances in the RICO context where the district court must not only apply Rule 9(b), but must proceed a step further before granting a motion to dismiss:

> In an appropriate case, where, for example[,] the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant, the court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint.

*Becher,* 829 F.2d at 290.

The *Becher* precedent does not assist the appellants. There, the plaintiff had explicitly requested, and was refused, an opportunity for discovery and a chance to file a further amended complaint.[10] Here, however, the plaintiffs initiated no discovery. They did not ask the district court to stay its hand pending an opportunity for discovery. They neither sought leave to amend their complaint nor suggested to the court below that, by amending, they could cure the infirmities that infected the RICO count in terms of the supposed culpability of the six appellees. These distinctions set the instant case well apart from *Becher.*

We have written that "[c]ourts, like the Deity, are most frequently moved to help those who help themselves." *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.,* 840 F.2d 985, 989 (1st Cir.1988) (holding that Rule 56(f), permitting delay of summary judgment proceedings to allow an objector to conduct discovery, did not avail a party who neglected seasonably to invoke the rule). Here, the plaintiffs slept upon what they now claim were their entitlements. On appeal, they contend for the first time that they should have been granted discovery and the right to amend before the district court ended their attempt to sue the appellees under RICO. In our judgment, that lament comes too late:

> It is the practice in this circuit that, when a plaintiff, rather than amending, chooses to appeal from a judgment of dismissal, the court of appeals, if the order of dismissal is affirmed, will not permit an amended complaint to be filed.

*Royal Business Group, Inc. v. Realist, Inc.,* 933 F.2d 1056, 1066 (1st Cir.1991); *accord Powers,* 926 F.2d at 112; *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635–36 (1st Cir.1988). In this case, there is no sound reason to overlook the usual rules of pleading and practice and relieve the appellants from their seemingly deliberate choice to stand or fall upon their complaint as pleaded. *See Beaulieu v. United States IRS,* 865 F.2d 1351, 1352 (1st Cir.1989) ("it is a party's obligation to seek any relief that might fairly have been thought available in the district court before seeking it on appeal"); *James v. Watt,* 716 F.2d 71,

---

**10.** In *Becher,* the plaintiff had assiduously pursued discovery. In response to the defendants' motion to dismiss, the plaintiff submitted an affidavit vouchsafing that the defendants had been evasive in responding to interrogatories previously propounded. The plaintiff explicitly requested that further discovery be allowed and that the defendants be required to comply with a previously served document request and an earlier court order requiring certain discovery. *Becher,* 829 F.2d at 292.

78 (1st Cir.1983) (plaintiffs should not ordinarily be allowed to stand on their complaint as pleaded, "pursue a case to judgment and then, if they lose, to reopen the case by amending their complaint to take account of the court's decision"), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984); *cf. Paterson–Leitch*, 840 F.2d at 989 & n. 4 (objector who elected to meet summary judgment motion head-on, without invoking Fed.R.Civ.P. 56(f), and lost, could not thereafter employ the rule to spare it from the consequences of its own lack of diligence).

To recapitulate, we are not so foolhardy as to require district judges to act as mind readers. Although *Becher* may in certain circumstances give a plaintiff a second bite at the apple, its generous formulation is not automatically bestowed on every litigant. In a RICO action where fraud has not been pleaded against a given respondent with the requisite specificity and Rule 9(b) has been flouted, dismissal should follow as to that respondent unless the plaintiff, at a bare minimum, suggests to the district court, in a timely manner, that a limited period of discovery will likely allow him to plug the holes in the complaint and requests leave (i) to conduct discovery for this limited purpose and (ii) thereafter to amend his complaint. It is only then that a district court must take a second look to ascertain whether a particular case is "appropriate," *Becher*, 829 F.2d at 290, for the special unguent of deferral.

### B. *Was There A Pattern?*

Even if the complaint contained more specificity as to the time, place and contents of the allegedly fraudulent communications, we would still affirm the order of dismissal on the ground that it failed adequately to limn a pattern of racketeering activity. A pattern requires more than just the existence of multiple racketeering predicates. *See H.J.*, 492 U.S. at 238, 109 S.Ct. at 2900 (RICO's legislative history leaves no doubt that "there is something to a RICO pattern *beyond* simply the number of predicate acts involved"); *see also Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. Thus, the allegation of two or more

predicate acts of mail fraud "is necessary but not sufficient to establish a pattern of racketeering activity." *Sion*, 893 F.2d at 444; *see also Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 30 (1st Cir.1987) ("Racketeering acts ... do not constitute a pattern simply because they number two or more."). For there to be a pattern, a plaintiff must demonstrate not only the existence of two or more predicate acts, but also that they are related and pose at least a threat of continued criminal activity. *See H.J.*, 492 U.S. at 238–39; *Sion*, 893 F.2d at 444. Even apart from the overly scanty description of the predicates, the abstract scenario painted by the plaintiffs in the instant complaint did not meet the requirements of relatedness and continuity.

1. *Relatedness.* The relatedness test is not a cumbersome one for a RICO plaintiff. A showing that predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events" is essentially all that is needed. *H.J.*, 492 U.S. at 240, 109 S.Ct. at 2901; *Sion*, 893 F.2d at 445. A fact-specific allegation of a single common scheme can be used to satisfy the relatedness requirement. *See Sion*, 893 F.2d at 445; *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1273 (10th Cir.1989). Here, the complaint described two sets of transactions stemming from the formation of the joint ventures: (1) the 1986 property acquisitions in upstate New York and (2) the 1988 property swap whereby the Texas properties were conveyed.

We recognize that, as pleaded, the 1986 and 1988 episodes each featured serial transactions that had some common reference points, most notably the victims' identities and the Gleason/Foster axis. Moreover, the purposes of the underlying transactions were at least similar. But notwithstanding these facts, plaintiffs' RICO claim founders on the bald assertion that these two episodes, nearly two years apart in time, hundreds of miles apart in space, and involving two largely distinct groups of participants, were somehow pieces of a uni-

tary scheme. We fully agree with the court below that the facts as alleged, while arguably sufficient to show relatedness with regard to the actions of common participants such as Gleason and Foster, did not implicate any of the other defendants in the same way. No allegations appeared suggesting that, say, Humes or Commonwealth Federal were involved in the 1986 episode, or that Evans, the Swartz Firm, Sweet, or Carthage Federal were involved in the 1988 episode. In the absence of any demonstrable imbrication, the plaintiffs' claim that these episodes were successive segments in a single scheme implicating the defendants' collective actions is nothing more than a conclusory assertion which need not be honored under Rule 12(b)(6). *See Correa–Martinez*, 903 F.2d at 52; *Dartmouth Review*, 889 F.2d at 16. We rule, therefore that the district court correctly wrote off the plaintiffs' allegations as insufficient to stake a claim that the 1986 and 1988 episodes were part of a common scheme for which the appellees, collectively, could be held liable.[11]

2. *Continuity.* The fact that the 1986 and 1988 episodes lack the requisite relatedness *inter sese* does not end our inquiry. The appellees do not argue, nor could they successfully argue, that the serial transactions *within* each of the two episodes lacked relatedness to each other. Hence, we must examine each episode separately to deduce whether there has been a sufficient showing of continued criminal activity.

Under recent High Court precedent, two methods are available to determine if a set of predicate acts has achieved the continuity necessary to underbrace a RICO claim. *See, e.g., H.J.*, 492 U.S. at 238, 109 S.Ct. at 2900. For there to be continuity, the plaintiff must show that the related predicates "amounted to, or posed a threat of, continued criminal activity." *Sion*, 893 F.2d at 445–46 (discussing *H.J.*). Under the "amount[ing] to" approach, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J.*, 492 U.S. at 242, 109 S.Ct. at 2902. Because RICO was intended by Congress to apply only to enduring criminal conduct, "[p]redicate acts extending over a few weeks or months ... do not satisfy this requirement." *Id.* Under the "threat" approach, however, even where the predicate acts occur in a narrow time frame and suit is brought before the pattern has taken definitive shape, the requirement can still be satisfied by demonstrating a realistic prospect of continuity over an open-ended period yet to come. This approach necessitates a showing that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] ... are part of an ongoing entity's regular way of doing business." *Id.*

Viewed against this backdrop, the allegations anent the 1986 episode fail to satisfy the continuity requirement. The conduct complained of, insofar as it involved the appellees, spanned no more than three to four months. The only factual allegations regarding Evans and the Swartz Firm concerned their representation of the plaintiffs at some twenty-five real estate closings between March and June of 1986. On the facts that appear of record, this is too short a period to support a claim that the appellees were engaged in the long-term criminal conduct at which RICO

---

11. At oral argument before us, appellants' counsel suggested that it should be sufficient for the sake of pleading relatedness that the two episodes "seemed" to the victims to be part of a common scheme. We find this suggestion wholly inconsistent with the Supreme Court's approach to the pattern requirement. Although the Court stated that "[a] 'scheme' is in the eye of the beholder" and also conceded "[t]hat there is no obviously 'correct' level of generality" for courts to use in delimiting the term, *H.J.*, 492 U.S. at 241 n. 3, 109 S.Ct. at 2901 n. 3, the adoption of the factually specific "continuity plus relatedness" test was expressly designed to provide a practical way around this conceptual problem. *See id.* at 238–43, 109 S.Ct. at 2900–03. Because we read *H.J.*, as imposing a clear obligation on a RICO plaintiff to allege "a concrete factual situation[ ]," *id.* at 242, 109 S.Ct. at 2902, sufficient to demonstrate both continuity *and* relatedness, we reject appellants' attempt to reduce the question of relatedness to a largely subjective inquiry.

is aimed. *See, e.g., Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1418 (3d Cir.) (eight-month period of fraudulent activity did not constitute a pattern, absent threat of future criminal acts), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Parcoil Corp. v. Nowsco Well Service, Ltd.,* 887 F.2d 502, 503–05 (4th Cir. 1989) (seventeen falsified reports sent over a period of four months did not establish continuity); *Sutherland v. O'Malley,* 882 F.2d 1196, 1204–05 (7th Cir.1989) (three acts of mail fraud within five months did not satisfy continuity plus relatedness requirement); *see generally H.J.,* 492 U.S. at 242–43, 109 S.Ct. at 2902–03; *Sion,* 893 F.2d at 447.

■■■■ The allegations against Sweet and Carthage Federal are even weaker than those against Evans and the Swartz Firm. The full extent of the pleaded conduct attributed to these defendants consists of the appraisal of twenty properties and the subsequent issuance of three mortgages, all between early March of 1986 (when the appellants' loan applications were submitted) and May of that year (when Carthage Federal granted the mortgages).[12] This is precisely the sort of "sporadic activity," *H.J.,* 492 U.S. at 239, 109 S.Ct. at 2900, that Congress did not intend to be the target of RICO actions. *See Id.* at 241–42, 109 S.Ct. at 2901–02; *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

■■■■ We regard as mere buzznacking the plaintiffs' efforts to suggest a lengthened period of involvement with respect to Carthage Federal's role by reliance on billing notices from, as well as checks to, the lender, dating from 1989 and 1990. There is no assertion that these communications were in any way irregular, comprised a means by which the fraudulent scheme was perpetrated, or served to perpetuate or conceal the fraud. Hence, they cannot be considered "separate fraudulent actions" for the sake of establishing a pattern. *See Fidelcor,* 926 F.2d at 1414–15; *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.,* 883 F.2d 48, 51 (7th Cir.1989) (subsequent and varied uses of stolen software did not comprise additional predicate acts relevant to establishment of RICO pattern); *cf. Sion,* 893 F.2d at 443 (ninety-five checks were the actual means by which defendants fraudulently conveyed assets of companies). We hold that, in assessing the longevity of a RICO scheme involving allegations of mail fraud, the scheme's duration must be measured by reference to the particular defendant's fraudulent activity, rather than by otherwise innocuous or routine mailings that may continue for a long period of time thereafter. *Accord Fidelcor,* 926 F.2d at 1418.

■■■■ Shakier still is the claim alleged against defendant Humes in regard to the 1988 episode. The only actions implicating Humes relate to his appraisals of some twenty-three of the plaintiffs' Watertown properties between the time when Gleason and Foster proposed trading these properties (June 1988) and the time, less than two months later, when Commonwealth Federal made a loan secured by these properties. We fail to see how, by any stretch of the imagination, such isolated incidents might be construed to be long-term criminal conduct, or somehow woven together to establish continuity and, thus, the jurisdictionally necessary pattern of racketeering activity.

■■■■ Commonwealth Federal, of course, stands on the outermost periphery of the action. Its only alleged wrongdoing consisted of the issuance of a single mortgage on August 4, 1988. It is little short of chimerical to posit, from so fragile a link,

---

**12.** Carthage Federal approved mortgages for Feinstein, Herbert, and Gaev. Each mortgage secured six or seven parcels of land appraised by Sweet. Although the plaintiffs claimed that Sweet was also involved in the appraisal of properties subsequently acquired by Krasten Associates, that allegation was not supported by the exhibit to which they made reference. It must, therefore, be disregarded. *See Chongris,* 811 F.2d at 37 (when pleaded facts are effectively contradicted by the pleader's submissions or concessions, such facts need not be credited for purposes of Rule 12(b)(6)). In any event, had Carthage Federal or Sweet been involved with Krasten, too, no different result would obtain.

that the charges against Commonwealth Federal somehow met the continuity requirement. RTC, as Commonwealth Federal's conservator, was therefore entitled to dismissal.

Lastly, contrary to the appellants' hopeful rumination, the complaint did not catch these defendants on the alternative prong of "constitut[ing] a threat of ... continuing racketeering activity." *H.J.*, 492 U.S. at 240, 109 S.Ct. at 2901. There is no valid basis for suspecting that the appellees' supposed misconduct constituted a threat of continuing racketeering activity at the time it is alleged to have occurred. The plaintiffs do not assert, or even suggest, that the behavior will likely be repeated or that the actions complained of constituted the regular way in which Evans, the Swartz Firm, Sweet, Humes, and/or the two lenders conducted their ongoing businesses.

## IV. CONCLUSION

We need go no further.[13] Because count 1 of the complaint failed adequately to allege the essential elements of a claim under 18 U.S.C. § 1962(c), that statement of claim was properly dismissed as to the appellees. Since federal question jurisdiction hinged on the viability of that count, and there was no complete diversity of citizenship or other cognizable basis for the asser-

tion of subject matter jurisdiction in the district court, the pendent state-law claims were properly dismissed without prejudice under the rule of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See, e.g., Gilbert v. Cambridge*, 932 F.2d 51, 66 (1st Cir.1991); *Brennan v. Hendrigan*, 888 F.2d 189, 196 (1st Cir.1989).

*Affirmed. Costs in favor of appellees.*

CYR, Circuit Judge (dissenting).

In my view the majority undermines the core imperative of rule 54(b): a *district court* may direct entry of final judgment under rule 54(b) *"only* upon an *express* determination that there is no just reason for delay *and* upon an *express* direction for the entry of judgment." Fed.R.Civ.P. 54(b) (emphasis added).[1] Only by disregarding the plain language of the rule and its principal purpose—safeguarding the policy against piecemeal appellate review, *see, e.g., Makuc v. American Honda Motor Co.*, 692 F.2d 172, 173–74 (1st Cir.1982) (per curiam)—can mere entry of an otherwise interlocutory order be considered a sufficient basis for an appellate court to infer that the district court correctly made the required determination and direction, let alone that it did so expressly.[2]

---

**13.** RTC not only presses its motion to dismiss for failure to state a cause of action, Fed.R.Civ.P. 12(b)(6), but contends that the action against it should be stayed because the plaintiffs failed to exhaust the administrative procedures mandated by § 212 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(d)(13)(D). *See generally Circle Industries, Div. of Nastasi–White, Inc. v. City Federal Savings Bank*, 931 F.2d 7, 8 (2d Cir.1991) (per curiam) (discussing exhaustion requirement). We think it is at least arguable that RTC must either fish or cut bait; that is to say, by pressing its motion to win dismissal on the merits, it may have waived the exhaustion requirement for purposes of this suit. *Cf., e.g., United States v. Tierney*, 760 F.2d 382, 388 (1st Cir.) ("Having one's cake and eating it, too, is not the fashion in this circuit."), *cert. denied*, 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). But, inasmuch as Commonwealth Federal, and thus RTC as its conservator, is entitled to dismissal under Rule 12(b)(6), that ends the matter. We leave for another day both the applicability of the exhaus-

tion doctrine and any questions of waiver pertaining thereto.

**1.** Rule 54(b) goes on to say, in language no less clear:

> In the absence of *such* determination *and* direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *shall not* terminate the action as to *any* of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b) (emphasis added).

**2.** Although it is clear that rule 54(b) invokes the discretion of the district court, *Little Earth of United Tribes, Inc. v. United States Dept. of Housing & Urban Dev.*, 738 F.2d 310, 313 (8th Cir.1984) (per curiam), not the court of appeals, the record fails to disclose a sound basis for inferring that the district court made the required determinations respecting the appropri-

The majority opinion demonstrates the difficulties encountered when an appellate court attempts to infer that a district court has taken express action *sub silentio*. Yet the court dispenses with the "simple, definite, workable" requirements of the rule, as well as the important policy it serves, *see* Notes of the Advisory Committee to the 1946 Amendment to Rule 54, not to mention our own supplementary monition aimed at fostering compliance and facilitating effective appellate review, *see Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 42–43 (1st Cir.1988) (when "the district court concludes that entry of judgment under Rule 54(b) is appropriate, it should ordinarily make specific findings setting forth the reasons for its order.") (citations omitted).

I write separately not so much to emphasize our differences as to urge a stance on an interpretive principle which might offer the prospect of firmer footing for courts whose responsibility it is to discern our course. Sometimes rules of procedure are perceived as mere formalities, even when important prudential policies are at stake; while their enforcement may on occasion entail an unwelcome appearance of wooden decisionmaking, the alternative is to spare the ritual and spoil the rule.[3] I respectfully dissent.

---

ateness of an immediate appeal. True, the motions for entry of judgment were endorsed by the district judge, but neither they nor the accompanying memoranda articulated particular grounds for concluding that piecemeal review should be permitted in this case. *See Panichella v. Pennsylvania R.R. Co.,* 252 F.2d 452, 455 (3d Cir.1958) (the trial judge is required to exercise a "considered discretion, weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present.").

3. Normally, the procedure prescribed by rule 54(b) is no mere formality. *Panichella,* 252 F.2d at 455 ("The power which this Rule confers upon the trial judge should be used only ... as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule.") (citations omitted). *See also Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 9–12, 100 S.Ct. 1460, 1465–67, 64 L.Ed.2d 1 (1980).