James DICKEY, Plaintiff,

v.

Edward KENNEDY, Defendant.

Civil Action No. 07–11717–NMG.

United States District Court,
D. Massachusetts.

Sept. 26, 2008.

Alexandra B. Alland, Kenneth J. Forton, City of Boston Law Department, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

### I. *Background*

The defendant in a civil action in which a *pro se* plaintiff alleges violations of Title IX of the Organized Crime Act of 1970, 18 U.S.C. § 1961 *et. seq.* ("the RICO Act") has filed a motion to dismiss for failure to state a claim.

### A. Factual Background

The defendant, Edward Kennedy ("Kennedy"), was an employee of the City of Boston ("the City") Inspectional Services Department ("the Department"). He is no longer employed by the City. The *pro se* plaintiff, James Dickey ("Dickey"), owns property in the South Boston and Dorchester neighborhoods of Boston, Massachusetts. The following facts are based upon Dickey's complaint, the allegations of which are presumed to be true for purposes of resolving the pending motion to dismiss.

Dickey alleges that Kennedy conspired to extort real property from him and from other property owners in Boston. As part of that scheme, Kennedy, in his official capacity as a Boston employee, would allegedly condemn a building with the intention of forcing its owner to sell it to Kennedy's associates at a reduced price. If the owner did not sell the property, Kennedy would have the building placed in receivership, appointing an associate as receiver. The receiver would then apparently agree to the recording of an excessive mortgage on the property, fail to make payments and let foreclosure proceed. According to Dickey, the amount of the mortgage would, in effect, become the purchase price because the receiver would submit exaggerated expenses for repair of the property.

Sometime in late February, 2003, Kennedy informed Dickey that he lived on East Second Street in South Boston and had noticed that an African American male was living in the second floor apartment of Dickey's house on that same street ("the East Second Street Property"). Kennedy told Dickey that if he did not remove the occupant from the apartment, he would board up the house. Dickey asked the occupant to vacate the apartment and that was done in March, 2003. Also in February or March, 2003, Kennedy asked Dickey if he was interested in selling the house on East Second Street but Dickey demurred. Kennedy then allegedly had the house condemned.

Between June and September, 2003, Kennedy condemned two other houses not owned by Dickey. One of the properties, located at 27 G Street in South Boston, was sold after condemnation to three individuals including John Meaney ("Meaney"), an employee of the Department and a friend of Kennedy. The price which Meaney paid for the property was less than one half the price at which he later sold it.

In August, 2003, the other property not owned by Dickey, located at 20 Clayborne Street in Dorchester, was condemned. On September 23, 2003, the condemnation was upheld at a hearing at which Meaney was the hearing officer and Kennedy testified. In June, 2004, the Massachusetts Attorney General's Office ("the AG's Office") filed a petition for receivership with the Boston Housing Court for the unoccupied building at 20 Clayborne Street. The petition was granted and Jonathan Kaye ("Kaye"), an associate of Kennedy, was appointed as receiver. Sometime in 2005, Kaye mortgaged the property for close to its full value. The following year the property was sold at foreclosure. Kaye purchased the building at the auction for an amount greater than the mortgage but submitted exaggerated expenses to the Housing

Court thereby eliminating any potential equity of the foreclosed owner.

On August 25, 2003, Dickey received a building permit to reside in his property on Mt. Ida Road in Dorchester ("the Mt. Ida property"). After the house was re-shingled, Kennedy condemned it and had it boarded up on September 16, 2003. Dickey was charged for the cost of the boarding, the tenants were forced to vacate the premises and Kennedy allegedly threatened Dickey with arrest for trespass if he went near it. On October 7, 2003, the City held a condemnation hearing with respect to the Mt. Ida property. Kennedy is accused of submitting false and/or exaggerated reports with respect to the condition of the property, the condemnation of which was upheld by Meaney.

In October or November, 2003, Kennedy, acting on behalf of the City, petitioned the AG's Office to have the Mt. Ida property placed in receivership due to its abandoned status. The building was unoccupied at the time. Kennedy and his associates allegedly submitted false information to the AG's Office for the purpose of extorting property from Dickey, e.g., Kennedy reported that the common halls were "missing, broken not working". After multiple attempts, Dickey's contractor obtained a permit for the Mt. Ida property in late 2003 but six months later Kennedy purportedly solicited another employee of the Department to void those permits. Kennedy told that employee that Dickey had fired his contractor and was doing all of the work on the Mt. Ida property himself. In December, 2005, the AG's Office filed a petition with the Boston Housing Court to appoint Kaye as receiver of the subject property indicating that it was an abandoned house. The receivership petition was denied by the judge after Dickey displayed pictures of the house.

## B. Procedural History

In his complaint filed on September 14, 2007, Dickey alleges that Kennedy violated the RICO Act, in that he committed the substantive offense of racketeering and conspired to commit acts of racketeering in violation of 18 U.S.C. § 1962(c) and (d). In lieu of an answer, over four months later, Kennedy filed a motion to dismiss for failure to state a claim upon which relief can be granted. The motion to dismiss will be resolved as follows.

## II. *Analysis*

### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet*, 83 F.Supp.2d at 208. To survive a dismissal on a RICO claim, a plaintiff must allege facts sufficient to prove four elements: 1) conduct, 2) of an enterprise, 3) through a pattern, 4) of racketeering activ-

ity. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996).

## B. Application

In his motion to dismiss, Kennedy argues that Dickey 1) fails to allege, with the requisite particularity, that Kennedy engaged in racketeering activity, 2) does not allege a pattern of criminal activity, 3) fails to state a claim for conspiracy and 4) may not assert his RICO claims because they are time barred under the relevant statute of limitations.

### 1. Particularity

Kennedy first argues that Dickey has not made allegations of a RICO violation with sufficient particularity. Fed. R.Civ.P. 9(b) requires that claims alleging fraud be pled with particularity. That rule extends to pleading predicate acts of mail and wire fraud under RICO. *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir.1991). Kennedy argues that Dickey's allegations of mail fraud "are so diffuse and void of any specific facts" that they fail to satisfy that requirement. Unlike in the case that Kennedy cites to support his argument, however, Dickey does state in his complaint "when the communications occurred, where they took place, [and] what they contained". *See id.* He alleges that Kennedy sent false information to the AG's Office in October or November, 2003 and that one of the misstatements was that "the common halls were missing, broken not working". Especially in light of the fact that Dickey is proceeding *pro se*, which requires this Court to read his complaint liberally, *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir.1990), the allegations of extortion and mail fraud meet the particularity requirement.

Kennedy also argues that, with respect to particularity, Dickey has not made out a claim of extortion because he has not alleged that Kennedy or anyone else obtained any property from Dickey. As Dickey points out, however, 18 U.S.C. § 1951, the provision that prohibits extortion, also prohibits attempts to commit extortion. The complaint is sufficiently particular in its allegations that Kennedy attempted to extort Dickey's property. His motion to dismiss will not be allowed based on a lack of particularity.

### 2. Pattern of Criminal Activity

Kennedy next argues that Dickey has failed to allege a pattern of criminal activity. In addition to having to allege two predicate acts of racketeering in order to set out a RICO claim, Dickey must also demonstrate that the predicate acts are related and "that they amount to or pose a threat of continued criminal activity". *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). A plaintiff asserting a RICO claim can satisfy the requirement that criminal activity is on-going by alleging:

> [1) ] a series of related predicates extending over a substantial period of time that amount to a threat of continued criminal activity [ ("the closed-ended approach") or 2) that the] racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] ... are a part of an ongoing entity's regular way of doing business [ ("the open-ended approach") ].

*Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir.2005) (citations omitted).

Kennedy argues that the allegations in Dickey's complaint fail to allege a pattern of criminal activity under either the closed-ended or open-ended approach. He asserts that this is not the kind of extensive and enduring criminal conduct that Congress intended to address through RICO.

Although this is a close case, the Court is satisfied that Dickey has adequately alleged a pattern of criminal activity. The complaint includes allegations of racketeering behavior over the course of almost three years. Even excluding conduct relating to the East Second Street Property which, as explained below, is time barred, Dickey provides examples of relevant criminal behavior with respect to three properties, which, if found credible by a jury, would amount to a pattern of criminal activity. In *Efron v. Embassy Suites*, 223 F.3d 12 (1st Cir.2000), the case on which Kennedy relies, the predicate acts aimed to achieve a single goal and, although there were three victims, those victims were not separately targeted. Instead, the injuries of the victims in *Efron* resulted from "a single set of alleged misdeeds". *Id.* at 18. In fact, in *Efron,* the court specifically stated that, had the three victims been separately targeted through "repetitions of criminal conduct", such behavior "could have reflected persistent or broad based crime". *Id.* Dickey's complaint alleges that individuals were targeted separately through repetitions of similar criminal conduct over a three-year period and therefore he has adequately alleged a pattern of criminal activity.

### 3. RICO Conspiracy

■ Kennedy next argues that Dickey's complaint fails to state a claim for RICO conspiracy. Such a claim requires allegations of the same elements of a RICO claim, plus allegations that each RICO co-conspirator "knowingly joined the conspiracy and involved himself or herself, directly or indirectly, in the commission of at least two predicate offenses". *Mani v. United Bank,* 498 F.Supp.2d 406, 411 (D.Mass.2007).

Kennedy asserts that, with respect to the two properties Dickey owned, he does not allege that Kennedy acted in concert with anyone else. Although Dickey does not specifically use the words "acting in concert" or "conspiracy", he does state that the hearing regarding the Mt. Ida property was held before Meaney and that Kennedy recommended Kaye as the receiver. Reading the complaint liberally and considering the allegations with respect to Dickey's property in light of the allegations about other properties discussed in the complaint, the Court concludes that Dickey adequately alleges conspiracy. Dickey's allegations at least imply that Meaney and Kaye were working with Kennedy in order to extort property from certain people. Assuming the allegations to be true, as this Court must on a motion to dismiss, Dickey asserts sufficient facts to state a claim of conspiracy.

### 4. Statute of Limitations

■■ Kennedy's final argument is that Dickey's RICO claims are barred because most of the racketeering activity alleged against him occurred outside the RICO four-year statute of limitations. The RICO Act itself does not contain a statute of limitations but the Supreme Court has held that civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The statute of limitations begins running on a RICO claim according to the "injury discovery accrual rule" which ties accrual to the time when a plaintiff first knew or should have known of his injury. *Rotella v. Wood,* 528 U.S. 549, 554–56, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

Dickey filed his complaint on September 14, 2007, and therefore any claim based on an injury that could have been discovered prior to September 14, 2003, is time barred. As Kennedy notes, all allegations with respect to the East Second Street

Property occurred prior to September 14, 2003, and, consequently, Dickey may not base any claims for recovery on those activities. All alleged activities with respect to the Mt. Ida property occurred after September 14, 2003, however, and therefore claims with respect to that property are not barred. Consequently, Kennedy's motion to dismiss will be allowed to the extent that it seeks to dismiss any claims, or parts of claims, based upon injury occurring prior to September 14, 2003.

## ORDER

In accordance with the foregoing, Defendant's Motion to Dismiss (Docket No. 5) is, to the extent it seeks to dismiss claims based on injury that occurred prior to September 14, 2003, **ALLOWED** but is otherwise **DENIED.**

**So ordered.**