**JARDINES BACATA, LIMITED,
Plaintiff, Appellant,**

v.

**Aniceto DIAZ–MARQUEZ, et al.,
Defendants, Appellees.**

**No. 89–1062.**

United States Court of Appeals,
First Circuit.

Heard June 8, 1989.

Decided July 10, 1989.

Giselle Lopez Bajandas with whom Dominguez & Totti, Hato Rey, was on brief for appellant.

Marcos Valls with whom Juan A. Ramos and Cobian & Ramos, San Juan, were on brief for appellees.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

SELYA, Circuit Judge.

If it is true, as a lawyer-turned-poet once wrote, that "[e]rror is a hardy plant [which] flourisheth in every soil," M. Tupper, *Proverbial Philosophy of Truth in Things False* (1842), then this appeal stems from a

*Of the District of Massachusetts, sitting by designation.

veritable hothouse of efflorescent lapses by the parties, their counsel, and, in some respects, by the district court. We have pruned the overhanging foliage and weeded the ground cover, with mixed results.

## I

The seeds of strife were sown in 1983 when plaintiff-appellant Jardines Bacata, Ltd. (JBL), a Colombian corporation, agreed to sell flowers on credit to Belinda Wholesale Florists, Inc. (Belinda). In connection therewith, Belinda's owners, Aniceto Diaz Marquez (Diaz) and Humberto Sedan Sucar (Sedan), signed and delivered a guaranty which provided in pertinent part:

> That in order to induce Jardines de Bacata, Limited, a Colombian corporation dedicated to the business of producing flowers to extend credit and grant exclusivity of its flowers in Puerto Rico to Belinda Wholesale Florists Inc., the appearing parties bound themselves personally to pay the bills Belinda Wholesale Florists Inc. do not pay due to any noncompliance or for reason of bankruptcy or insolvency. Jointly and severally.

JBL thereupon began shipping flowers to Belinda. But, by 1986, the account was apparently in arrears. JBL invoked diversity jurisdiction, 28 U.S.C. § 1332, and sued Belinda, Diaz, Diaz's wife, Sedan, Sedan's wife, and the stockholders' respective conjugal partnerships, in federal district court. The docket reveals that, in rather turgid succession, the following events occurred:[1]

1. February 3, 1986—plaintiff filed its complaint.

2. February 18, 1986—Sedan and his conjugal partnership were served.

3. March 14, 1986—Mr. and Mrs. Sedan filed a joint petition for personal bankruptcy, thus staying proceedings as to them. Notice of the bankruptcy was filed in the district court.

4. May 9, 1986—plaintiff's motion for leave to serve Diaz, Mrs. Diaz, and their conjugal partnership by publication was allowed.

5. July 16, 1986—Diaz, having been served, answered plaintiff's complaint.

6. January 20, 1987—Diaz moved for summary judgment. The motion was thereafter referred to a magistrate.

7. January 22, 1987—bankruptcy proceedings against the Sedans were dismissed and the automatic stay lifted. JBL notified the district court by motion filed February 2, 1987, simultaneously requesting leave to proceed against the Sedan defendants.

8. March 4, 1987—plaintiff's motion to proceed against the Sedan defendants was allowed.

9. July 13, 1987—a magistrate's report was filed recommending (i) that Diaz's Rule 56 motion be denied, and (ii) that the action be dismissed as to "Mrs. Diaz" and the Diaz conjugal partnership.[2]

10. August 5, 1987—plaintiff moved for summary judgment against Diaz.

11. August 5, 1987—the district court adopted the magistrate's report and recommendations (*see supra* No. 9). A partial judgment was entered on August 17 dismissing the complaint against the fictitious Mrs. Diaz and the fantasmal conjugal partnership.

12. May 18, 1988—Diaz moved to require joinder of all named parties.

13. August 12, 1988—the district court denied plaintiff's motion for summary judgment (*see supra* No. 10) and granted summary judgment in Diaz's favor *sua sponte*.

14. August 12, 1988—presumably in response to Diaz's May 18 motion (*see supra* No. 12), the district court entered a further order (i) requiring Sedan and his conjugal partnership, both previously served (*see supra* No. 2), to answer by September 12 on penalty of default, and (ii) directing plain-

---

**1.** The listing is but a partial chronology. We have cherry-picked the docket, eliminating references to ancillary matters (*e.g.*, discovery motions, attachments, etc.) not central to the issues on appeal.

**2.** Diaz, it seems, was unmarried.

tiff to effectuate service on Belinda and Mrs. Sedan, neither previously served, within the same period.

15. September 13, 1988—plaintiff moved for a 30-day extension "within which to serve process upon Belinda Wholesale Florists, Inc." Three days later, the district court granted the extension.

16. November 2, 1988—the district court dismissed as to Belinda for want of service, and as to the Sedan defendants because "they are undergoing bankruptcy proceedings." The bankruptcy filings, of course, had been vacated long before. *See supra* No. 7.

17. November 14, 1988—plaintiff moved for rehearing or alternatively to set aside the November 2 order, and also moved for permission to serve Belinda by publication.

18. November 23, 1988—the district court denied plaintiff's motions, but recognized its earlier bevue and altered the basis for discharging the Sedan defendants, predicating the dismissal on JBL's unexcused "delay in prosecuting this action."

19. December 19, 1988—plaintiff filed its notice of appeal.[3]

## II

JBL presents us with a chase of arguments, capped by the assertion that error of one sort or another contaminated the judgments entered in favor of each and every defendant. Contrary to conventional wisdom, we believe that the forest in this instance can best be visualized by looking separately at each tree.

### A. *Belinda Wholesale Florists, Inc.*

█ The district court's dismissal of the action as to Belinda must be viewed in light of Fed.R.Civ.P. 4(j). The rule provides in material part:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Fed.R.Civ.P. 4(j). We have said that "the evident purpose of Rule 4(j) was to compel parties and their counsel to be diligent in prosecuting causes of action." *United States v. Ayer*, 857 F.2d 881, 884 (1st Cir. 1988). We added:

There is, of course, a glaring need for such sedulity. When suit is filed, the limitations period is ordinarily tolled. Yet, until the defendants receive some formal notice of the institution of the action, they are not assured a meaningful opportunity to discover, marshall, and preserve evidence, that is, to prepare a defense. Then, too, the court has a systemic interest in the progress of its own docket and in management of a burgeoning flow of litigation. To meet this amalgam of needs, the rule provides a stern sanction—dismissal—unless service is perfected within the 120-day limit or there is "good cause" for the time overrun.

*Id.*

In this case, JBL filed its complaint on February 3, 1986. As of November 2, 1988 —close to three years later—Belinda had not been served. In August, *see supra* No. 14, the district judge warned plaintiff that it was courting dismissal if it did not serve Belinda. In response, JBL asked for an extra 30 days to effectuate service. This largesse was granted long after a less patient jurist would have lowered the boom. Yet, plaintiff frittered the enlargement away. It was not until some weeks later— the extension having run out, unused—that the court ordered the dismissal. *See supra* No. 16. Mindful both that nearly three years had passed and that plaintiff, to this date, has not displayed good cause for ne-

---

**3.** At oral argument, the panel questioned the sufficiency of plaintiff's notice of appeal vis-a-vis defendant Diaz. Counsel for Diaz conceded, however, that the appeal properly raised the court's grant of summary judgment in Diaz's favor. We accept the concession.

glecting to serve Belinda, we think the court acted well within its discretion.[4]

### B. *Mrs. Sedan.*

█ As to Mrs. Sedan, a dismissal for want of prosecution could seemingly rest on Rule 4(j) as well. *See* D.P.R.L.R. 313.-1(A) (failure of compliance with Fed.R.Civ. P. 4(j) subjects case to dismissal for want of prosecution). Nevertheless, plaintiff argues that the dismissal was wrong because, though Mrs. Sedan was never served with process, she "submitted herself" to the court's jurisdiction by filing an "answer" (in the bankruptcy court) to plaintiff's complaint. We disagree.

In the ordinary course, the district court acquires jurisdiction over a defendant only by service of process. *See, e.g., Royal Lace Paper Works, Inc. v. Pest–Guard Products, Inc.*, 240 F.2d 814, 816 (5th Cir. 1957) ("it is settled law that, without personal service of process ... the court was without jurisdiction to render a personal judgment against [the defendant]") (footnote omitted). Of course, the root purpose underlying service of process is to ensure that a defendant receives fair notice of the suit and adequate opportunity to protect her interests. Because the requirement is designed to safeguard the defendant, she can forgo it. Thus, if a defendant, not yet served, answers the complaint against her in district court and does not assert defenses relating to personal jurisdiction or insufficiency of process, she may be deemed to have waived the requirement. *See, e.g., Dernell v. Steel Partitions, Inc.*, 105 F.Supp. 87, 88–89 (W.D.N.Y.1952); *P. Bei-*

ersdorf & Co. v. Duke Laboratories, Inc., 10 F.R.D. 282, 283 (S.D.N.Y.1950); *Food, Tobacco, Agricultural and Allied Workers Union v. Smiley*, 74 F.Supp. 823, 826 (E.D.Pa.1946), *aff'd*, 164 F.2d 922 (3d Cir. 1947). *Cf.* Fed.R.Civ.P. 12(h)(1) (discussing waiver of certain defenses).

█ Be that as it may, a waiver, to be effective in these circumstances, must unequivocally show an intention to submit to the district court's jurisdiction. *Cf. Irons v. FBI*, 811 F.2d 681, 686 (1st Cir.1987) ("the common denominator of all the legal definitions of 'waiver' is the purposeful relinquishment of an appreciated right"). Certainly, there was no express waiver here. The mere docketing of a motion in the bankruptcy court acknowledging plaintiff's claim and commenting upon it, even if attributable to Mrs. Sedan,[5] was no substitute for answering the case in the district court. Pleadings cannot so easily be transplanted from court to court or from case to case. The Civil Rules are explicit as to what constitutes "filing," *see* Fed.R.Civ.P. 5(d), (e), and it is manifest that no answer or other pleading was filed by Mrs. Sedan *in the district court.*

Nor can we infer a waiver from any conduct on Mrs. Sedan's part. "To prove a case of implied waiver of a legal right, ... there must be a clear, unequivocal and decisive act of [the party to be charged] showing a purpose to abandon or waive the legal right...." *Gaffney v. Unit Crane & Shovel Corp.*, 117 F.Supp. 490, 491 (E.D. Pa.1953). Put another way, "if proof of a waiver rests on one's acts, 'his act[s] ... should be so manifestly consistent with and

---

**4.** Plaintiff says that error also flowered when the district court refused to permit it to serve Belinda by publication. But, JBL did not seek leave to proceed in that fashion until *after* the court dismissed the case. Once it had ordered the Rule 4(j) dismissal, the court was under no obligation to reopen the proceedings—especially since there is nothing in the record to suggest that plaintiff, exercising due diligence, could not have attempted to serve Belinda by publication many months earlier.

**5.** What appellant persists in styling an "answer" is a two-page motion allegedly filed in the bankruptcy court around June of 1986. The "answer" ostensibly responds to a motion filed by

JBL *qua* creditor in the bankruptcy court on May 15, 1986. It does not *mention* Mrs. Sedan, let alone purport to be filed by her. The motion says that it is on behalf of a "debtor"; refers throughout to "debtor" in the masculine singular; and at one point identifies "debtor" as "Humberto Sedan Succar" [sic]. To the extent that the record on appeal does not contain all of the relevant portions of the bankruptcy court record, we must count such skimpiness against appellant. *See Real v. Hogan*, 828 F.2d 58, 60–61 (1st Cir.1987) (listing cases); *see also* Fed.R. App.P. 10(b). All in all, from what is before us, it seems doubtful that this document can be said to bear Mrs. Sedan's imprimatur.

indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible.'" *Bechtel v. Liberty National Bank,* 534 F.2d 1335, 1340 (9th Cir.1976) (quoting *Buffum v. Chase National Bank,* 192 F.2d 58, 61 (7th Cir.1951), *cert. denied,* 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952)). *See also Irons,* 811 F.2d at 686–87 (same). Whatever we may make of the enigmatic filing docketed in a separate case before the bankruptcy court, *see supra* note 5, it is too much of a stretch to infer therefrom that Mrs. Sedan, if chargeable with the filing at all, knowingly intended to waive service of process in this case.

The district court did not err in dismissing the suit against Mrs. Sedan. *See* Fed. R.Civ.P. 4(j); D.P.R.L.R. 313.1(A).

### C. *Mr. Sedan and the Sedan Conjugal Partnership.*

As to Mr. Sedan and the conjugal partnership, the appropriateness of dismissal also hinged on want of prosecution. *See supra* No. 18. But unlike Mrs. Sedan, these defendants had been served. Because this distinction is pivotal, we believe the dismissals must be vacated.

■ To be sure, in garden-variety cases, Fed.R.Civ.P. 41(b) affords district courts substantial latitude to dismiss for failure to prosecute. *See HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.,* 847 F.2d 908, 916–17 (1st Cir. 1988); *Richman v. General Motors Corp.,* 437 F.2d 196, 199 (1st Cir.1971). Where a court has adopted an interstitial local rule to implement a Civil Rule, however, "elemental fairness" requires resort to the more particularized local rule *Martinez Class v. Caribe Hilton Hotel,* 784 F.2d 12, 13 (1st Cir.1986) (per curiam) (discussing Rule 41(b)). That is the situation here. Under D.P.R.L.R. 313.1(B), cases are subject to dismissal for want of prosecution where, *inter alia,* "[n]o substantial proceedings of record have been taken for a term of six (6) months as shown by the

record docket." [6] The local rule defines "substantial proceedings" to include dispositive motions, discovery measures, and the like. *Id.* It has been construed authoritatively as requiring "substantial proceedings to advance the case as a whole, not substantial proceedings as to each defendant individually" in order to avert dismissal. *Ruiz Varela v. Sanchez Velez,* 814 F.2d 821, 825 (1st Cir.1987) (per curiam).

In this instance, the district court plowed under plaintiff's suit against Sedan and the conjugal partnership in November 1988. Within the previous six months, the docket reflects that sufficiently "substantial proceedings" had taken place. *See, e.g., supra* Nos. 12–15. Under comparable circumstances, we said before in connection with this same local rule that its "clarity ... and the reliance placed upon it by the practicing bar requires that it be adhered to." *Martinez Class,* 784 F.2d at 13. Particularly since the district court seems to have penalized plaintiff for the failure of these served defendants to answer as the court had directed (*see supra* No. 14), it was a clear abuse of discretion to dismiss the case against Sedan and the Sedan conjugal partnership for lack of prosecution. *See generally United States v. Diaz–Villafane,* 874 F.2d 43, 46 (1st Cir.1989) ("Once local rules have been promulgated, lawyers and their clients have a right to place reasonable reliance on them.").

### D. *Mr. Diaz.*

■ The court below granted summary judgment in Diaz's favor on its own initiative, coincident with its decision to deny plaintiff's summary judgment motion. *See supra* No. 13. A district court has power to order summary judgment *sua sponte, Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *National Expositions, Inc. v. Crowley Maritime Corp.,* 824 F.2d 131, 133–34 (1st Cir.1987), but that power should be exercised sparingly. Courts that yearn for the blossom when only the bud is

---

**6.** Local Rule 313.1(B) specifies other grounds for want-of-prosecution dismissals—*e.g.,* failure to post security for costs—but none have any

bearing upon this situation. Local Rule 313.-1(A), discussed *supra* at 7, applies only where particular defendants remain unserved.

ready act at their peril; proceeding with unnecessary haste frequently results in more leisurely repentance. Consequently, we have too often in the recent past been forced to vacate *sua sponte* summary judgments. *See, e.g., Donate–Romero v. Colorado*, 856 F.2d 384, 386–87 (1st Cir.1988); *Bonilla v. Nazario*, 843 F.2d 34, 37 (1st Cir.1988); *Morales Morales v. Arias*, 834 F.2d 255, 257 (1st Cir.1987); *see also PNH Corp. v. Hullquist Corp.*, 843 F.2d 586 (1st Cir.1988) (reversing *sua sponte* dismissal of cross-claims).

For *sua sponte* summary judgment to be a viable option, discovery in the case must be sufficiently advanced and the party against whom judgment was ordered must have been on notice to bring forth all of its evidence on the essential elements of the critical claim or defense. *See Celotex*, 477 U.S. at 326, 106 S.Ct. at 2554; *National Expositions*, 824 F.2d at 133–34. "Notice" in this context means that the losing party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward. Doubts on this score should be resolved in the loser's favor; "great care must be exercised to assure that the [unsuccessful party] has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2720 at 34 (1983). It is only after these preconditions have been met that the court can proceed to ascertain fairly whether a genuine issue of material fact does or does not exist.

We need not paint the lily. In this case, the district court's reasoning in granting summary judgment was along the following lines:

A. Defendant gave his personal guaranty (whereby he obligated himself to pay Belinda's debts), having cultivated plaintiff's return agreement to (i) sell to Belinda on credit, and (ii) constitute Belinda as its exclusive distributor in Puerto Rico.

B. Although plaintiff sold to Belinda on credit (to its subsequent regret, we might add), it was too busy a bee. It also sold to others, in derogation of the exclusivity arrangement.

C. Plaintiff's failure to maintain the stipulated exclusivity relieved Diaz of his correlative obligation under the guaranty.

For the purpose at hand, one thorn among these roses is plaintiff's claim that Diaz knew, and accepted, the conversion of Belinda's status from exclusive to non-exclusive distributor, yet reaffirmed his personal guaranty. Nothing in the record can honestly be said to have put JBL on notice to bring forward all its evidence on the matter of waiver and reaffirmation, or endure the consequences.[7] By the same token, the waiver/reaffirmation argument is not inherently implausible, nor is there anything which we can find in leafing through the court papers to suggest that it is necessarily without basis in fact.

We have tilled this arid soil enough. We have no reason to believe that plaintiff, if properly on notice, could not raise genuine issues of material fact anent waiver and reaffirmation. JBL must at least be given an opportunity to show precisely what it can prove in this regard before suffering the swing of the summary judgment scythe.

## III

Having sown, we reap, eschewing, however, a needlessly flowery peroration. The district court's decrees dismissing the action against Mrs. Sedan and Belinda Wholesale Florists, Inc. are affirmed.[8] The order

---

7. To be sure, Diaz alluded to the subject in his opposition to plaintiff's Rule 56 motion. But, JBL may well have seen the handwriting on the wall, believed that—whatever it put forward—the issue would have to be tried, and sat back accordingly, content that its motion be denied. It had no reason to anticipate that inaction on its part could prove more dear, particularly since the court had previously refused to grant

*brevis* disposition in Diaz's favor. *See supra* No. 11.

8. It defies imagination why, other than from an overdeveloped sense of self-righteousness and need for vindication, plaintiff chose to appeal from these two orders. The dismissals operated without prejudice, and counsel conceded at oral argument that she could simply have filed new

dismissing the action against Humberto Sedan Sucar and his conjugal partnership is reversed, and the suit reinstated as to them. The order granting summary judgment in favor of Aniceto Diaz Marquez is vacated. The case is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; vacated in part; remanded. No costs.

suits against Belinda and Mrs. Sedan (as will doubtless now be attempted). Even if successful, the appeal as to these defendants would have gained nothing.