Manuel BENITO–HERNANDO; Maria Concepcion Santamaría–Ibañez; Jose Ramon Benito–Santamaría; Maria Concepcion; Olga Benito–Santamaría; Jorge Luis Benito–Santamaría, and Fernando Benito–Santamaría, Plaintiffs,

v.

Rafael GAVILANES; R. Gavilanes, Inc.; Bienvenido Aristud, d/b/a Borinquen Fastening Systems; Acha Trading Co., Inc.; A Corporation; B Corporation; Insurance Co. of Florida; X, Y, Z, K, L & M Insurance Companies, Defendants.

Civ. No. 90–2641 (JAF).

United States District Court,
D. Puerto Rico.

April 6, 1994.

Hector Cuebas–Tañon, Vicente & Cuebas, San Juan, PR, for plaintiffs.

Rebeca F. Rojas, Lasa Escalera & Reichard, San Juan, PR, for defendants.

### OPINION AND ORDER

FUSTE, District Judge.

This case presents an attempt by plaintiffs to circumvent the clearly-established employer immunity from suit available in this jurisdiction under the dispositions of the Puerto Rico Workmen's Accident Compensation Act ("PRWACA"), 11 L.P.R.A. §§ 1–42, for tort actions arising from work-related accidents.

Plaintiffs, the son and relatives of decedent Manuel Oscar Benito–Santamaría, have sued, among others, the employer of decedent Benito–Santamaría, R. Gavilanes, Inc., and the corporation's president, Mr. Rafael Gavilanes. The corporation is an insured employer under PRWACA.

In a motion to dismiss and/or for summary judgment, Rafael Gavilanes seeks to enforce his personal employer-related immunity and indirectly that of his corporation, against the tort action for wrongful death and the resulting damages.[1] Plaintiffs oppose, alleging

---

1. The dispositive motion names Rafael Gavilanes as the movant. R. Gavilanes, Inc., the insured corporate employer, has not been named as a party seeking *brevis* disposition. It is obvious, however, that the corporate defendant's status under PRWACA is at the heart of the controver-

that the grossly negligent act of sole stockholder and supervisor Rafael Gavilanes, in failing to provide a safe place to work forecloses the availability of the immunity defense on public policy considerations. Having examined the parties' respective contentions, we find no genuine controversy of material fact and grant summary judgment for movant, Rafael Gavilanes. In addition, we grant summary judgment *sua sponte* in favor of R. Gavilanes, Inc.

## I.

### *Facts*

The facts, seen in the light most favorable to the plaintiffs, have been extracted from the Second Amended Complaint received by the court on September 21, 1993. On May 7, 1987, R. Gavilanes, Inc. purchased a high-velocity nailgun tool for the R. Gavilanes, Inc. business. The nailgun uses the technology of a firearm and drives nails, screws or similar fastening devices into hard surfaces, such as cement.

In the early morning of December 22, 1989, Mr. Rafael Gavilanes ordered José Eduardo Santiago and other corporate employees to fix a metal ceiling in the corporation's parking lot. For this purpose, the employees used the nailgun. Mr. Gavilanes left the premises later in the morning and the decedent, Benito–Santamaría, was left in charge of supervising the workers. At the time the decedent instructed his fellow employees to take the lunch break, the tool jammed. In order to free the nailgun, decedent's co-employee, José Eduardo Santiago, slammed the gun against some hard surface, causing it to fire the fastening device that had been previously loaded into the gun. The decedent, who was in the process of leaving the worksite at R. Gavilanes, Inc.'s parking lot area, was struck by a projectile/fastening device on the right side of his body, perforating his right lung and causing severe internal injury. The projectile lodged in decedent's spinal cord. As a result of the nailgun wound, Manuel Oscar Benito–Santamaría died later that day.

sy. The moving papers and the opposition so

The Second Amended Complaint alleges that after the gun was placed in service by Gavilanes in 1987, the tool frequently jammed. The evidence, seen in the light most favorable to the plaintiffs, shows that R. Gavilanes, Inc.'s employees had called Mr. Gavilanes' attention to the jamming incidents and he failed to replace the nailgun or have the malfunction permanently repaired.

Plaintiffs allege that Rafael Gavilanes was the sole stockholder, president, and general manager of R. Gavilanes, Inc. and that he directed the affairs of the corporation as if a sole proprietor-type business.

## II.

### *Summary Judgment Standard*

A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

■■ The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986). This burden has two components: An initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. *Id.* Where, as in this case, the nonmoving party will have the burden of persuasion at trial, the moving party may satisfy the Rule 56 burden of production by submitting evidence that negates an essential element of the nonmoving party's claim or by showing the court

confirm.

that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.*

■ A district court has the power to grant summary judgment *sua sponte* or on its own initiative. *Stella v. Town of Tewksbury,* 4 F.3d 53 (1st Cir.1993); *Jardines Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1560 (1st Cir.1989). Two requirements must be met. First, the discovery phase must be sufficiently advanced that the court can make an accurate determination of "whether a genuine issue of material fact does or does not exist." *Stella,* 4 F.3d at 55 (citations omitted). Second, the target "must have been on notice to bring forth all of its evidence on the essential elements of the critical claim or defense." *Id.* " 'Notice' in this context means that the losing party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Jardines Bacata,* 878 F.2d at 1555.

Examining the motion for summary judgment with the supporting materials, we find that both codefendants have discharged their burden of production and that the evidentiary materials submitted by plaintiffs fail to demonstrate the existence of a "genuine issue" of material fact which would require a trial.

### III.

### *Workmen's Accident Compensation Act*

#### A. *Rafael Gavilanes*

■ The Puerto Rico Workmen's Accident Compensation Act provides the employers which have insured their employees with the State Insurance Fund immunity against any civil action arising out of a work-related accident. 11 L.P.R.A. §§ 2, 21. In this case, R. Gavilanes, Inc. is an insured employer under PRWACA and, thus, immune from suit for work-related accidents. The corporate employer's immunity extends to the corporate employer's supervisors or managers who are responsible for fulfilling the employer's non-delegable duty of providing a safe work environment for its employees. *Rivera–Santana v. Superior Packaging, Inc.,* 92 J.T.S. 165 (1992).

■ In addition, the place and circumstances under which the accident occurs will determine if the accident is compensable under PRWACA. *See Gallart, Admor. v. Comisión Industrial,* 87 D.P.R. 17, 22–23 (1962). Accidents which take place on the premises of the employer, even while the employee is enjoying his lunch break or is arriving at work from home or leaving work for home, are compensable. Considerations of time, place, and relation to the legitimate business of the insured employer are weighed to determine compensability. *Candelaria v. Comisión Industrial,* 85 D.P.R. 20, 24 (1962). *See Valentín Nadal v. Industrial Commission,* 94 P.R.R. 630, 633–34 (1967); *Atiles, Admor. v. Comisión Industrial,* 69 D.P.R. 951 (1949).

■ The present accident took place in the parking lot of the employer, R. Gavilanes, Inc. The sole stockholder, manager, and safe work environment supervisor was Rafael Gavilanes. Benito–Santamaría also acted as the supervisor of the employees who were using the malfunctioning nailgun. As Benito–Santamaría was leaving the worksite, after announcing the lunch break, he was struck by a projectile from the nailgun while still in the employer's parking lot. The decedent's accident took place on the employer's premises and is compensable under PRWACA because it was closely related to the normal work carried out at R. Gavilanes, Inc.

This coverage determination is supported by the Puerto Rico State Insurance Fund's decision regarding decedent's accident. *Docket Document No. 32,* Exh. 1, "Decisión del Administrador sobre Compensabilidad, Muerte y Dependencia." The Administrator, State Insurance Fund, concluded that the deceased had suffered a work-related accident while working for codefendant and ordered compensation pursuant to the State Insurance Fund.

■ Under Puerto Rico law, decisions by administrative agencies enjoy great deference by the courts. "It is a well-recognized norm of [the Supreme Court of Puerto Rico] to give 'great consideration and respect' to conclusions and interpretations of specialized

administrative bodies." *Colonos de Caña de Santa Juana, Inc. v. Junta Azucarera,* 77 D.P.R. 392, 396 (1954). Indeed, Puerto Rico courts are obliged to respect findings of fact made by the Industrial Commission on appeals from the Puerto Rico State Insurance Fund. *Vega Cruz v. Comisión Industrial,* 110 D.P.R. 349, 352 (1980); *Cardona Velázquez v. Comisión Industrial,* 90 D.P.R. 257 (1964). Since the Puerto Rico State Insurance Fund decision over the accident was not appealed and is final, we follow the Administrator's finding of coverage under the Puerto Rico Workmen's Accident Compensation Act. Our independent analysis confirms that the accident was work-related.

Plaintiffs next contend that the corporate employer's immunity normally available to the supervisor in charge of providing a safe work environment should not be extended to the grossly negligent or intentional acts by company officer Rafael Gavilanes. Plaintiffs base their argument on *Rivera–Santana v. Superior Packaging, Inc.,* 92 JTS 165, n. 24 (1992), where the Supreme Court of Puerto Rico stated in *dictum:*

> We do not decide, since it was not raised, if the employer's immunity covers this employee-official, shareholder, or supervisor—when he commits an intentional act and/or an act in which gross negligence was present and in violation of the employer's duty of providing a safe work-place. (Translation ours).

For the following reasons, we now decide that the quoted language in *Rivera–Santana* refers to quasi-criminal or criminal acts carried out by managerial co-employees or supervisors, and not to the typical negligent acts by fault or omission referred to in the Civil Code of Puerto Rico, article 1802, 31 L.P.R.A. § 5141.[2]

■ Under Puerto Rico law, tort liability is governed by Section 1802 of the Civil Code, 31 L.P.R.A. § 5141. The section reads as follows: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." The concept of fault is "infinitely encompassing, so broad and encompassing as the human conduct." *Reyes v. Sucn. Sánchez Soto,* 98 D.P.R. 305, 310 (1970). It covers every illicit act, including any intentional or negligent act. *Concepcion–Guzman v. A.F.F.,* 92 P.R.R. 473, 479 (1965). Puerto Rico tort law is governed by civil law and not by common law. *Valle v. American International Ins. Co.,* 108 D.P.R. 692 (1979); *Gierbolini v. Employers Fire Ins. Co.,* 104 D.P.R. 853 (1976). Thus, Puerto Rico courts do not recognize gross negligence or any other degrees of negligence found in common law. "§ 1042 of the Civil Code [31 L.P.R.A. § 2992] creates the obligation for illicit acts and omissions in which any kind of fault or negligence occurs." *Salva Matos v. Diaz Const. Corp.,* 95 P.R.R. 880, 886–87 (1968); *Ramos v. Carlo,* 85 P.R.R. 337 (1962) ("The wrongdoer is always liable for the damage, whether he has caused it deceitfully or through mere negligence and regardless of its degree"); I Herminio M. Brau, *Daños y Perjuicios Extracontractuales en Puerto Rico* § 7.01[3] (1986).

■ In sum, Puerto Rico tort law does not recognize a specific civil cause of action for intentional or grossly negligent acts. All extracontractual responsibility is governed by the fault or negligence standard under section 1802 of the Civil Code, 31 L.P.R.A. § 5141. Since PRWACA immunizes employers and its supervisors from civil suits for damages arising from negligence, R. Gavilanes, Inc. and Rafael Gavilanes are covered by the employer's immunity, the only potential future exception being cases where the co-employee is charged with grossly negligent or intentional acts punishable by Puerto Rico's criminal or quasi-criminal statutes. *Rivera–Santana,* 92 JTS at n. 24. This record fails to trigger the potential exception left open in the *Rivera–Santana* decision.

---

2. Certain acts of negligence may be given criminal or quasi-criminal character by specific legislation. *See* Section 5–201 of the Motor Vehicles & Traffic Law, 9 L.P.R.A. § 871, and Section 87 of the Penal Code of Puerto Rico, 33 L.P.R.A. § 4006. In both instances, negligent driving of a motor vehicle carries criminal or quasi-criminal consequences. Other examples of criminal conduct which may result in a "work-related accident" may be found in Puerto Rico's Penal Code, 33 L.P.R.A. §§ 4001, 4004–05, 4007–08 (crimes against human life). Other examples may be found in 33 L.P.R.A. §§ 4031–33 (crimes against corporal integrity).

In the case at bar, there is no allegation of a violation of a criminal statute by Rafael Gavilanes or R. Gavilanes, Inc. Plaintiffs have not cited a statutory provision which makes the use of a jamming nailgun a criminal or quasi-criminal act. In addition, we find no allegation or evidence that Rafael Gavilanes had the intention to either injure or kill Benito–Santamaría or any other employee. Plaintiffs have not adduced any proof of animosity between Gavilanes and Benito–Santamaría. Moreover, Gavilanes and Benito–Santamaría only knew about the nailgun's propensity to jam, not to fire accidentally after jamming. Under these circumstances, we cannot say that Rafael Gavilanes fits the criminal or intentional character of the exception mentioned in *Rivera–Santana,* 92 JTS at n. 24.

### B. *R. Gavilanes, Inc.*

Employers, like R. Gavilanes, Inc., which have paid the insurance premiums to the Commonwealth's State Insurance Fund, enjoy the immunity conferred by PRWACA. 11 L.P.R.A. § 2 and 21. The corporation did not move for summary judgment; however, the conditions precedent for the granting of summary judgment *sua sponte* in favor of R. Gavilanes, Inc. are present in this case. First, the parties agree that R. Gavilanes, Inc. was the insured employer of the decedent so that there is no issue of material fact remaining in this case. *See Docket Document No. 41, Plaintiffs' Statement of Uncontested Material Facts.* Second, Rafael Gavilanes' motion to dismiss and/or for summary judgment is premised on the extension of the employer's immunity to him as an officer and supervisor of the covered employer. Therefore, plaintiffs were put on notice as to the possibility of the dismissal of the complaint in favor of R. Gavilanes, Inc. based on the employer's immunity under PRWACA. We grant summary judgment in favor of R. Gavilanes, Inc.

### IV.

#### Conclusion

In sum, we conclude that the employer's immunity conferred by PRWACA covers defendants R. Gavilanes, Inc. and Rafael Gavilanes. We grant summary judgment in their favor, dismissing the complaint against these two codefendants. The present suit will continue against the local distributor of the nailgun, Bienvenido Aristud, d/b/a Borinquen Fastening Systems; Acha Trading Co., Inc., and their underwriters, under strict liability principles. *Ferrer–Delgado v. General Motors Corp.,* 100 D.P.R. 246 (1971), and *Mendoza v. Cerveceria Corona, Inc.,* 97 P.R.R. 481 (1969).

**IT IS SO ORDERED.**