Burnham v. Veterans Affairs          CV-94-662-JD  04/22/97

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Alice N. Burnham

    v.                                    Civil No. 94-662-JD

U.S. Department of
Veterans Affairs, et al.


O R D E R


The pro se plaintiff, Alice N. Burnham, brought this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a, against the defendant, Jesse Brown, in his capacity as Secretary of the United States Department of Veterans Affairs ("DVA").[1]  The plaintiff alleges that she was the victim of age discrimination while she was an employee of the Manchester, New Hampshire VA hospital in 1991 and 1992.  Before the court is the defendant's motion for summary judgment (document no. 86), to which the plaintiff has not filed an objection.

---

[1] The court has previously disposed of the plaintiff's claims against the United States Department of Veterans Affairs; Eugene Ochocki; Dorothy Nelson; E. Ruth Snider; Harriet Mercuri Redmond; Beverlee Beaulieu Ross; Carol Delafontaine; Linda Gross; the United States Equal Employment Opportunity Commission; DVA assistant counsel Neal Lawson; Administrative Judge Julie Procapiow-Todd; the National Association of Government Employees; Kenneth Lyons; Catherine McClure; Robert Collins; Joseph Delorey; Paul McCarrick; Richard McMeniman; and Robert LeClair.

<u>Background</u>[2]

The plaintiff worked as a part-time registered nurse at the Veterans Administration Medical Center ("VAMC") in Manchester, New Hampshire. She began work there on December 27, 1981. In May 1984, the plaintiff was transferred to work in the psychiatric ward on a night shift. In 1990, Nurse Redmond became the plaintiff's immediate supervisor. Redmond found the plaintiff's therapeutic interaction skills to be deficient. In particular, some of the patients in the ward expressed frustration with the way the plaintiff interacted with them.

Redmond periodically expressed her concerns to the plaintiff. On February 20, 1991, Redmond advised the plaintiff that she was not meeting the qualification standards for her position. The plaintiff was moved from the night shift to the day shift to give her more exposure to experienced nurses and increased involvement with doctors and other staff.

In April 1991, Redmond completed the plaintiff's proficiency report for the prior year (the "1990 proficiency report"). The report detailed deficiencies in the plaintiff's nursing practice and set goals for improving the plaintiff's performance. The plaintiff took exception to the report and filed a grievance.

_____

[2]The court summarizes the relevant factual background, resolving all genuine disputes of material fact in the light most favorable to the plaintiff.

In mid-April, Chief Nurse Hopper received two telephone calls, one from a lawyer with the employees' union and one from a United States Senator, informing Hopper that the plaintiff feared for her safety and that she was concerned about her negative performance evaluation. Both in response to the calls and because of continued concerns about the plaintiff's performance, the plaintiff was transferred to a night shift on a medical/surgical unit on April 20, 1991.

At the direction of a supervisor, the plaintiff's 1990 proficiency report was withdrawn and substituted with a report reaching the same general conclusions but not retaining detailed information about performance deficiencies. This was to allow the plaintiff an opportunity to improve her performance without specific deficiencies appearing in her permanent personnel records.

In September 1991, Nurse Ross was appointed head nurse of the medical/surgical ward. She began receiving complaints about the amount of time that the plaintiff and another nurse were taking to complete their duties.[3] On January 23, 1992, Ross completed the plaintiff's 1991 proficiency report. The report

---

[3]Steps similar to those taken with respect to the plaintiff, described infra, were taken with the other nurse in an effort to improve her performance. The other nurse's improvement was also unsatisfactory. She resigned, however, before her employment could be terminated.

3

identified four areas in which the plaintiff's skills needed improvement. On February 4, 1992, Ross informed the plaintiff that she would be transferred to a day shift to learn from more experienced nurses.

On February 5, 1992, Ross drafted an employee development plan setting forth a thirty-day time limit for the plaintiff to achieve certain goals to improve her performance. By the end of February, close monitoring of the plaintiff's performance revealed additional problems. Ross and Nurse Instructor Delafontaine concluded that the plaintiff's difficulties were caused by fundamental deficiencies in basic nursing practice. As a result of the plaintiff's lack of progress in February, her development plan was extended for another thirty days. During that period, the plaintiff showed negligible improvement.

As a result, Ross recommended that the plaintiff not be retained. The plaintiff's employment was terminated effective May 29, 1992. After her termination, the plaintiff brought this action alleging that she had been discriminated against by her former employer. The plaintiff alleges (1) that she was transferred from her job on the psychiatric ward to a position on the medical/surgical ward because of her age; and (2) that she was fired in May 1992 because of her age.

4

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden is on the moving party to establish the lack of a genuine, material factual issue, and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (citations omitted). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial[,]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)), or suffer the "swing of the summary judgment scythe." Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989).

Here the plaintiff has failed to respond to the defendant's motion for summary judgment.[4] As the First Circuit has noted:

---

[4]The plaintiff was granted numerous extensions throughout the course of this litigation. When the defendant initially filed his motion for summary judgment, the plaintiff sought either to have the motion struck or, alternately, to be granted an extension of her deadline to respond to the defendant's motion

> The mere fact that plaintiff failed to file a timely opposition does not mean that defendant's Rule 56 motion should be granted. Whether or not opposed, summary judgment can only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

See Mendez v. Banco Popular, 900 F.2d 4, 7 (1st Cir. 1990) (grant of summary judgment appropriate where opposing party had not filed timely opposition and moving party's materials showed it was entitled to judgment as matter of law) (citations omitted). Therefore, the court must first examine the defendant's materials to determine whether the defendant has met his initial burden of demonstrating the lack of a genuine issue of material fact on an element of the plaintiff's case. See id. To establish a prima facie (i.e., initially sufficient) case of age discrimination, the plaintiff must show the following: (1) she was more than forty years old; (2) she met the employer's legitimate performance criteria; (3) she was terminated; and (4) the

---

for summary judgment until March 15, 1997. The court denied the motion to strike but granted the extension, informing plaintiff that the court would consider the motion for summary judgment after March 15, 1997. Rather than answering the motion for summary judgment as required by the extended deadline, however, the plaintiff waited until March 18, 1997, and then filed a motion requesting the court to refrain from ruling on the motion for summary judgment for sixty days or, alternatively, to give the plaintiff sixty additional days to respond to the motion for summary judgment. The court, having liberally granted the plaintiff extensions of time in the past, denied this untimely request.

employer terminated her because of her age.  See Pages-Cahue v. Iberia Líneas Aéreas de España, 82 F.3d 533, 536 (1st Cir. 1996). The defendant asserts that the plaintiff cannot prevail because she cannot demonstrate, among other things, that she met her employer's legitimate performance criteria.

In support of this assertion, the defendant relies on, among other things, the following factors:  reports and statements from Redmond indicating increasing concerns with the plaintiff's lack of competence in performing her duties on the psychiatric ward; Redmond's transfer of the plaintiff from the night to the day shift in the psychiatric ward so that she could be supervised more closely and be exposed to experienced nurses; reports and statements from Ross and Delafontaine indicating concern with the plaintiff's lack of competence in performing her duties on the medical/surgical ward, including concern that the plaintiff's performance presented a risk of injury to patients; transfer of the plaintiff from the night to the day shift in the medical/surgical ward so that she could be supervised more closely and be exposed to experienced nurses; and placement of the plaintiff on a development plan, initially for thirty days but extended for an additional thirty, that failed to improve the plaintiff's performance and instead revealed more deficiencies. The court finds that the defendant's evidence satisfies his burden of showing the lack of a genuine issue of material fact on

7

the issue of the plaintiff's ability to meet VAMC's legitimate performance criteria. The court has examined the materials submitted by the plaintiff, and finds that they fail to meet her burden of demonstrating the existence of a genuine issue of material fact necessitating a trial.[5] Because of this, the defendant is entitled to summary judgment.[6]

## Conclusion

For the reasons stated above, the defendant's motion for summary judgment (document no. 86) is granted. The plaintiff's motion to strike (document no. 88), the defendant's motion to continue trial (document no. 111), and the plaintiff's motion for

---

[5]The plaintiff's filings in this case have been voluminous and include an amended complaint, which the court liberally construes to be a verified complaint. Although the plaintiff vigorously disputes the defendant's version of events, she has submitted only "conclusory allegations, improbable inferences, and unsupported speculation," which the court need not and does not accept, in support of her position. Rivera-Cotto v. Rivera, 38 F.3d 611, 613 (1st Cir. 1994).

[6]The defendant also asserts that, even assuming the plaintiff could show that she met her employer's legitimate performance criteria, she cannot demonstrate that her employment was terminated because of her age. The court finds that the defendant has satisfied his initial burden of demonstrating a lack of a genuine issue of material fact on this issue. In addition, the court finds that the plaintiff has failed to sustain her burden of demonstrating a genuine issue of material fact with respect to this element of her claim.

an extension of time to file pretrial materials (document no. 112) are denied as moot.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

April 22, 1997

cc:  Alice N. Burnham, pro se
     T. David Plourde, Esquire