<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1531

                         SHANNON ROGAN,

                     Plaintiff, Appellant,

                               v.

                THOMAS M. MENINO, ETC., ET AL.,

                     Defendants, Appellees.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

          [Hon. William G. Young, U.S. District Judge]

                             Before

                    Torruella, Chief Judge,
                                
               Selya and Lynch, Circuit Judges.
                                
                                
                                
    Sherman Rogan for appellant.
    John J. Cloherty, III, and Eve A. Piemonte Stacey, Assistant
Corporation Counsel, City of Boston, with whom Merita A. Hopkins,
Corporation Counsel, was on brief, for appellees.

April 29, 1999

 SELYA, Circuit Judge.  This appeal stems from a traffic
accident that occurred in Boston, Massachusetts.  It illustrates
once again the dangers that lurk when busy trial courts, struggling
to manage crowded dockets, do not turn square corners.  The tale
follows.
                               I
 On March 15, 1996, a motor vehicle operated by plaintiff-
appellant Shannon Rogan collided with a trolley car operated under
the auspices of the Massachusetts Bay Transportation Authority (the
MBTA).  The MBTA has its own police force, see Act of July 18,
1968, ch. 664, 1968 Mass. Acts 547 (creating a separate police
force to function within the MBTA's territorial authority and
investing its officers with powers equivalent to those of municipal
police officers), and that complement shares jurisdiction over
certain matters with the Boston Police Department (the BPD).  In
this instance, officers from both entities converged on the
accident scene.  Pursuant to departmental policy, the BPD officers,
John McDonough and Robert Colburn, relinquished control of the
investigation to their MBTA counterparts.
 Displeased with the results of the investigation, Rogan
sued Thomas Menino (Mayor of Boston), Paul Evans (Boston's police
commissioner), Dennis DiMarzio (Boston's chief of operations), and
the two responding officers in federal district court.  Her
complaint limned a plethora of claims   but Rogan voluntarily
discontinued most of them, and only one remnant is relevant here.  
Invoking 42 U.S.C.  1983, Rogan asserted that the five City of
Boston/BPD defendants, jointly and severally, hindered her access
to the courts vis--vis her accident-related claim for personal
injuries and property damage.  The defendants were liable, Rogan
theorized, because by abdicating responsibility for investigation
of the accident they had aided and abetted the MBTA's attempts to
cover up the trolley driver's negligence.  McDonough's and
Colburn's supposed liability rested on their refusal to take
control of the investigation, whereas the other defendants'
supposed liability related to their roles in promulgating and
enforcing a policy of relinquishing jurisdiction over accidents
involving MBTA carriers to MBTA police.
 The district court disposed of these claims in two
stages.  First, acting on the defendants' motion, see Fed. R. Civ.
P. 12(b)(6), it dismissed all claims against Menino, Evans, and
DiMarzio in their individual capacities.  Nearly a year later, at
the final pretrial conference, the court, acting on its own
initiative, brought closure to the suit by entering summary
judgment in favor of Evans and DiMarzio in their official
capacities and in favor of McDonough and Colburn.  Rogan now
appeals both the dismissal of her individual-capacity claims
against Evans and DiMarzio and the subsequent entry of a sua sponte
summary judgment.  We address each aspect of her appeal in turn.
                               II
 It is axiomatic that the liability of persons sued in
their individual capacities under section 1983 must be gauged in
terms of their own actions.  See Malley v. Briggs, 475 U.S. 335,
341 (1986); Camilo-Robles v. Zapata, ___ F.3d ___, ___ (1st Cir.
1999) (Camilo-Robles II) [No. 98-1590, slip op. at 7].  In
dismissing the claims against Evans and DiMarzio in their
individual capacities, the district court concluded that the
complaint utterly failed to link either defendant to the alleged
conspiracy to deprive Rogan of meaningful access to the courts.  We
review this decision de novo, scrutinizing the complaint in the
light most favorable to the plaintiff.  See Aulson v. Blanchard, 83
F.3d 1, 3 (1st Cir. 1996).  In that process, we   like the nisi
prius court   must give credence to all well-pleaded facts and
indulge all reasonable inferences that fit the plaintiff's stated
theory of liability.  See id.  We stop short, however, of
"swallow[ing] the plaintiff's invective hook, line, and sinker;
bald assertions, unsupportable conclusions, periphrastic
circumlocutions, and the like need not be credited."  Id. (citing,
inter alia, Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52
(1st Cir. 1990)).  If, on that basis, the factual averments do not
justify recovery on some theory adumbrated in the complaint, then
 and only then   can we affirm a dismissal for failure to state an
actionable claim.  See Leatherman v. Tarrant County N.I.&C. Unit,
507 U.S. 163, 164 (1993).
 We agree with the district court that the instant
complaint encompasses no set of facts that entitles Rogan to relief
against either Evans or DiMarzio, individually.  Charitably
construed, the complaint predicates liability on the theory that
BPD personnel collogued with MBTA personnel to conceal the
negligence of the trolley car driver, thus inhibiting Rogan's right
to sue the MBTA for damages.  Yet, the complaint does not allege
(or even insinuate) that either Evans or DiMarzio directly
participated in the actions that purportedly violated Rogan's
rights.  Rather, the complaint suggests some sort of supervisory
liability.  To state a cognizable claim on that basis, Rogan needed
to depict a scenario that would permit a fact-based inference that
Evans and DiMarzio were guilty of "conduct that amount[ed] to
condonation or tacit authorization" of wrongdoing.  Camilo-Robles
II, ___ F.3d at ___ (collecting cases) [slip op. at 5]; see also
Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) (Camilo-
Robles I) (explaining that supervisory liability requires proof of
an affirmative link sufficient to show causation).  To a
significant extent, the existence of such conduct depends on the
presence or absence of notice.  See Camilo-Robles II, ___ F.3d at
___ [slip op. at 12]; Camilo-Robles I, 151 F.3d at 7.  Rogan,
however, alleges no facts from which a rational reader might infer
that Evans or DiMarzio knew (or had any basis for knowing) that
MBTA police officers were skewing investigations to minimize MBTA
liability.
 On appeal, Rogan attempts to confess and avoid.  She
admits the lack of any averments suggesting notice, but asks us to
infer from Evans's and DiMarzio's awareness of the transfer policy
a corresponding awareness of the allegedly unconstitutional
execution of that policy.  The inference is much too strained.  The
BPD's policy of ceding jurisdiction to the MBTA is undoubtedly
constitutional on its face   after all, there is no constitutional
prohibition against organizational schemes that lodge self-
investigative powers within a government agency, cf. Withrow v.
Larkin, 421 U.S. 35, 52 (1975) (rejecting the proposition that
"agency members who participate in an investigation are
disqualified from adjudicating")   and mere knowledge of the
transfer policy's existence therefore cannot serve as a proxy for
notice of its unconstitutional implementation.
 We have said enough on this score.  Since Rogan failed to
plead any facts sufficient to support an inference that Evans and
DiMarzio had notice that MBTA police officers were wielding
investigative powers in a way that threatened to deprive accident
victims of their civil rights, she failed to state a claim for
deliberate indifference against these defendants, individually.  
See Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)
(explaining that, to survive a motion to dismiss under Rule
12(b)(6), a complaint must "set forth factual allegations, either
direct or inferential, respecting each material element necessary
to sustain recovery").  Consequently, we affirm the district
court's dismissal of the individual-capacity claims against Evans
and DiMarzio.
                              III
 When it jettisoned the claims brought against Evans and
DiMarzio in their individual capacities, the district court kept
alive Rogan's official-capacity claims against these same
defendants, treating those as claims against the City of Boston.  
See Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  The court also
refused to dismiss the claims against McDonough and Colburn,
reasoning that the complaint could be read to allege that they knew
MBTA officers would not investigate the accident impartially.
 At the final pretrial conference, see Fed. R. Civ. P. 16,
the court demanded that Rogan marshal all the evidence at her
disposal to defeat summary judgment.  She attempted to comply with
this directive, but the court found her proffer inadequate.  
Declaring that no reasonable jury could find for Rogan on the
adduced evidence, the court, acting sua sponte, entered summary
judgment in the defendants' favor on all remaining claims.  Rogan
assigns error.
 It is apodictic that trial courts have the power to grant
summary judgment sua sponte.  See Berkovitz v. HBO, Inc., 89 F.3d
24, 29 (1st Cir. 1996).  Withal, that power is not unbridled.  To
protect against erosion of the fairness principles embedded in Fed.
R. Civ. P. 56, a court tempted to grant an unbesought summary
judgment must hew to Rule 56's procedural strictures.  See Stella
v. Town of Tewksbury, 4 F.3d 53, 56 (1st Cir. 1993).  Thus, before
the court can seriously consider sua sponte summary judgment, two
conditions precedent must be satisfied:  (1) the case must be
sufficiently advanced in terms of pretrial discovery for the
summary judgment target to know what evidence likely can be
mustered, and (2) the target must have received appropriate notice.  
See Leyva v. On The Beach, Inc., ___ F.3d ___, ___ (1st Cir. 1999)
[No. 98-1984, slip op. at 5]; Berkovitz, 89 F.3d at 29; Stella, 4
F.3d at 55.  Notice, in this context, has two aspects:  the summary
judgment target is entitled to know both the grounds that the
district court will consider and the point at which her obligation
to bring forth evidence  supporting the elements of her claim
accrues.  See Berkovitz, 89 F.3d at 31.
 Inasmuch as the lower court made its sua sponte ruling at
the final pretrial conference, with discovery complete (or nearly
so), the first condition precedent clearly was satisfied here.  It
is more problematic whether the court fulfilled the second
condition.  On one hand, the docket sheet reflects that no
outstanding motion to dismiss or motion for summary judgment was
extant when the court acted; the transcript of the penultimate
pretrial conference intimates no warning of the court's intention
to consider terminating the case at the final pretrial conference;
nothing in the procedural order entered by the court preliminary to
the final pretrial conference directed the parties to prepare for
a hearing on dispositive motions; and there is no other record of
a written notice that dispositive motions would be entertained at
that conference.  On the other hand, the defendants have proffered
a statement, signed by the district judge pursuant to Fed. R. App.
P. 10(c), which indicates that the court had in fact notified the
parties during an unreported chambers conference (presumably held
in connection with the penultimate pretrial conference) that
"pursuant to Fed. R. Civ. P. 16, [it might] dismiss any or all of
the defendants" at the final pretrial conference.  Moreover, the
defendants submitted several affidavits on the day before the final
pretrial conference, presumably in anticipation that the court
would consider terminating the case then and there.
 This Rule 10(c) statement arrives on our doorstep in a
peculiar manner.  In haec verba, Rule 10(c) permits only an
appellant, not an appellee, to prepare a statement summarizing what
transpired at an unreported proceeding.  Here, the appellees
prepared the statement, served it on the appellant, and convinced  
the district court, over the appellant's objection, to approve it.  
On that basis, the statement's legitimacy might well have been open
to question had Rogan asked this court, by motion or in her
appellate brief, to strike it.  Because Rogan has not mounted such
a protest in this venue, we treat any doubts about the statement's
provenance as waived, and we leave for another day the intriguing
question whether Rule 10(c)'s reference to "the appellant" must be
construed literally.
 Apart from this procedural obstacle, the statement
commands our respect.  If Rule 10(c) is to be more than a hollow
promise, a court of appeals must accept a district court's
reconstruction of what transpired at an unrecorded conference or
similar proceeding unless some basis exists for believing that the
trial court's account is patently unreasonable or deliberately
false.  See United States v. Keskey, 863 F.2d 474, 478 (7th Cir.
1988); cf. United States v. Serrano, 870 F.2d 1, 12 (1st Cir. 1989)
(applying this standard in the Fed. R. App. P. 10(e) context).  
Rogan makes no plausible accusation of unreasonableness or
falsification, and the record reveals no basis for such a charge.  
Hence, we accept the Rule 10(c) statement at face value.
 Even so, the mere announcement that the court might
dismiss the defendants at the final pretrial conference falls well
short of the specific notice to which parties are entitled under
Fed. R. Civ. P. 56.  In the first place, Rule 56 obliges the moving
party to inform the nonmovant of the grounds for the motion by
"identifying those portions of the 'pleadings, depositions, answers
to interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence of
a genuine issue of material fact."  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  As far as
the record in this case reveals, Rogan never received specific
advance warning of this kind from either the defendants or the
court.
 In the second place, once the movant articulates his
rationale for brevis disposition and submits the documentation (if
any) on which he relies, Rule 56(c) in terms entitles the summary
judgment target to no less than ten days within which to prepare a
defense to the motion.  This requirement persists even when the
trial court aspires to grant summary judgment on its own
initiative.  See Stella, 4 F.3d at 56; see also 11 James Wm. Moore
et al., Moore's Federal Practice  56.10[2][b] (3d ed. 1997).  
Here, however, the defendants filed several affidavits on the day
before the final pretrial conference, and the court considered them
without affording Rogan the benefit of the ten-day window that Rule
56 envisions.  In doing so, the court erred.  Accord Massey v.
Congress Life Ins. Co., 116 F.3d 1414, 1417-18 (11th Cir. 1997)
(reversing sua sponte summary judgment for failure to comply with
Rule 56's ten-day notice requirement).
 That the district court acted under the auspices of Fed.
R. Civ. P. 16 provides no cover.  To be sure, Rule 16 permits a
court to dispose of marginal claims or issues that do not warrant
a full-dress trial.  See Fed. R. Civ. P. 16(c)(1) (authorizing
district courts to "take appropriate action, with respect to . . .
the elimination of frivolous claims or defenses" at pretrial
conferences).  Nevertheless, when the district court employs
summary judgment as the vehicle for the elimination of such
detritus, Rule 16 does not trump the procedural prophylaxis of Rule
56.  See Stella, 4 F.3d at 56.  Without advance notice of the basis
of a looming dismissal, a targeted party lacks a "meaningful
opportunity to cull the best evidence supporting his position, and
to present that evidence, together with developed legal
argumentation, in opposition to the entry of summary judgment."  
Berkovitz, 89 F.3d at 31.  And where, as here, the summary judgment
loser was never afforded such an opportunity, sua sponte summary
judgment cannot stand.  See id. at 29 (holding that the trial
court must provide a targeted party with an "adequate opportunity
to dodge the bullet" before entering sua sponte summary judgment).
                               IV
 We need go no further.  The district court properly
dismissed the claims that Rogan brought against Evans and DiMarzio,
individually, and to that extent we affirm the judgment below.  
However, despite our repeated calls for caution in the use of sua
sponte summary judgments, see, e.g., Leyva, ___ F.3d at ___ [slip
op. at 4]; Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555,
1560-61 (1st Cir. 1989), the court below acted too hastily in
dispatching the other claims in this case.  Thus, we vacate the
remainder of the judgment and remand for further proceedings in the
district court.  We take no view of the merit (or lack of merit)
of Rogan's case.

Affirmed in part, vacated in part, and remanded.  All parties to
bear their own costs.

</body>

</html>